838 So.2d 778 (2003)
STATE of Louisiana
v.
Joseph L. BROOKS.
No. 2002-K-0792.
Supreme Court of Louisiana.
February 14, 2003.
Rehearing Denied March 21, 2003.
*779 Richard P. Ieyoub, Attorney General, Douglas P. Moreau, District Attorney, Richard C. Nevils, Dana K. Jones, Assistant District Attorneys, for Applicant.
Kathryn Flynn Simino, for Respondent.
PER CURIAM.
The charges in this case arose from an altercation that occurred outside a birthday party held at the American Legion Hall in Baton Rouge which resulted in respondent shooting and killing the victim. Respondent stood trial for second degree murder and a jury returned the responsive verdict of manslaughter. He was represented at trial, and in his subsequent appeal, by Jesse Hearin. The First Circuit reversed, finding the trial court erroneously excluded evidence which would have corroborated respondent's testimony concerning *780 a prior threat made by the victim. State v. Brooks, 98-1151 (La.App. 1st Cir.4/15/99), 734 So.2d 1232. The court of appeal remanded the case with instructions directing the trial court to conduct a hearing as to the admissibility of evidence proffered by respondent during a pre-trial hearing in support of his claim of self-defense. Brooks, 98-1151 at 17-18, 734 So.2d at 1241. The state sought review in this Court, which denied writs. State v. Brooks, 99-1462 (La.11/12/99), 749 So.2d 651. The state thereafter had one year in which to bring respondent to trial again. See La.C.Cr.P. art. 582 ("When a defendant obtains a new trial or there is a mistrial, the state must commence the second trial within one year from the date the new trial is granted, or the mistrial is ordered, or within the period established by Article 578, whichever is longer."). We granted the present application to consider whether the state carried its heavy burden of justifying a delay in the prosecution of several months beyond the expiration of the original one-year time limit. State v. Joseph, 93-2734, p. 1 (La.6/3/94), 637 So.2d 1032; State v. Rome, 630 So.2d 1284, 1286 (La.1984). For the reasons that follow, we find that the trial court correctly denied respondent's motion to quash and that the court of appeal erred in overturning that ruling and in ordering respondent discharged from prosecution.
At the hearing conducted on respondent's motion to quash, Dana Cummings, the assistant district attorney who tried the case against Hearin and was responsible for retrial, detailed the events following reversal of the case by the First Circuit. After this Court denied the state's application for review on November 12, 1999, Cummings had the case placed on the status docket for purposes of "touch[ing] base with whoever was representing the defendant at that time and also for plea negotiation." The victim's family had prompted Cummings's interest in a plea by urging her to resolve the case without subjecting them to a second trial. See R.S. 46:1844(D)(2)(a)(requiring a prosecutor to obtain the advice of the victim or a designated family member regarding "[t]he disposition of the criminal case by dismissal, plea, or trial."). Hearin remained respondent's attorney of record; he had last appeared in the case on August 31, 1999, at a hearing for purposes of setting post-conviction bond following reversal of respondent's conviction and sentence by the First Circuit. Shortly thereafter, respondent secured his release from jail and remained free on bond throughout the subsequent proceedings.
Cummings testified that Hearin had then contacted her personally on November 30, 1999, the date set for a status conference, and told her that "he had not yet been retained by Mr. Brooks [for the second trial] and would like to continue the matter." Hearin repeated that statement in open court and the matter was reset for another status conference on January 27, 2000. On that date, in response to Cummings's offer to begin plea negotiations, Hearin again stated that he had not yet been retained by respondent and his family and that plea negotiations were not appropriate because he did not formally represent respondent. Hearin also informed Cummings that "after he was retained he did want to entertain and speak to his ... client about a plea."
The status conference was reset for March 22, 2000. On that date, Hearin appeared in court and formally enrolled as counsel for respondent. At that time, Cummings again spoke with Hearin and proposed a plea bargain in which respondent would plead to manslaughter in return for a specific sentence. However, Cummings was uncertain whether she would need to file a superceding bill of *781 information charging respondent with manslaughter or whether she could proceed under the original and unamended grand jury indictment charging second degree murder.[1] Given the assistant district attorney's uncertainty, the arraignment and status conference set for that date were continued by mistake until May 1, 2000, Law Day in the district court, which required rolling over the conference date to June 21, 2000. At this point in the case, no trial date had been set, and the case began to run on parallel tracks after Cummings filed a new bill of information on May 3, 2000, charging respondent with manslaughter.
At some point after March 22, 2000, it became clear to Cummings that Jesse Hearin would not be responding to her plea offer and that "there was a problem with representation in the case." In fact, Hearin had failed to appear on behalf of several of his clients and Cummings had learned from someone who shared office space with the attorney that Hearin "had in fact disappeared, for lack of a better word." On June 21, 2000, respondent appeared in proper person for arraignment set on the superceding bill and confirmed on the record that he had retained new counsel, Mr. Tommy Damico, who was busy in another court and could not attend the proceedings. Damico had previously called both Cummings and the trial judge to convey the same information. Damico also requested Cummings to reset the case for the following week. However, because of a conflict with Cummings's schedule, the trial court reset the status conference and arraignment for July 26, 2000. On that day, Damico appeared in court and respondent was formally arraigned on the superceding bill. Plea negotiations began immediately but broke down when Damico informed Cummings at a status conference on August 10, 2000, that respondent had rejected her plea offer. A trial date of November 13, 2000 was then set. The state ultimately continued the trial on that date because another trial was still in progress.
On January 5, 2001, or well over one year from this Court's denial of review in the appeal, respondent filed a pro se motion to quash the indictment, claiming that the time limit under La.C.Cr.P. art. 582 for commencing a new trial had expired. On February 2, 2001, respondent, accompanied by Damico, appeared in court on his pro se motion. After a hearing, the trial court denied the motion without giving reasons. The court then accepted respondent's guilty plea, under the original indictment for second degree murder after Cummings dismissed its superceding bill. As part of his guilty plea respondent reserved the right to appeal from the court's adverse ruling on his motion to quash. See State v. Crosby, 338 So.2d 584, 586 (La.1976). The court sentenced respondent to 10 years imprisonment at hard labor.
In a split decision, the First Circuit reversed and vacated respondent's conviction and sentence, finding that "for one year prior to the filing of the motion to quash on January 5, 2001, no interruption or suspension of the time period for institution of prosecution occurred, and the trial court erred in denying respondent's motion to quash." State v. Brooks, 01-0640, p. 4 (La.App. 1st Cir.12/28/01), 807 So.2d 325, 328 (Whipple, J., dissenting). The court of appeal acknowledged that the *782 minute entry of March 22, 2000, indicated that the matter was continued on a joint motion, but based on its own examination of the transcript concluded otherwise. Specifically, the majority concluded that defense counsel's reference to the lack of a formal bill charging respondent with manslaughter did not constitute his acquiescence to a continuance and thus could not be chargeable to respondent for purposes of suspending the prescriptive period.[2] Accordingly, it found that no suspension of the time period for institution of prosecution had occurred and thus that the trial court had erred in concluding otherwise. Brooks, 01-0640 at 3-4, 807 So.2d at 327-28.
The controlling provision for suspension of the applicable time limits appears in La.C.Cr.P. art. 580, which states:
When a respondent files a motion to quash or other preliminary plea, the running of the periods of limitation established by Article 578 shall be suspended until the ruling of the court thereon; but in no case shall the state have less than one year after the ruling to commence trial.
The grounds for suspension under La.C.Cr.P. art. 580 also apply to the time limits specified by La.C.Cr.P. art. 582 after a new trial or a mistrial has been granted. State v. Falkins, 395 So.2d 740, 741 (La.1981). For purposes of art. 580, a preliminary plea is any pleading or motion filed by the defense which has the effect of delaying trial. State v. Cranmer, 306 So.2d 698, 700 (La.1975); State v. Elfert, 247 La. 1047, 175 So.2d 826, 828 (1965). These pleadings include properly filed motions to quash, motions to suppress, or motions for a continuance, as well as applications for discovery and bills of particulars. State v. Brooks, 505 So.2d 714, 725 (La.1987); State v. Fabacher, 362 So.2d 555, 556 (La.1978). Joint motions for a continuance fall under the same rule. State v. Jones, 620 So.2d 341, 342 (La.App. 5th Cir.1993) (citing State v. Simpson, 506 So.2d 837 (La.App. 1st Cir.1987), writ denied, 512 So.2d 433 (La.1987)); see also State v. Rome, 93-1221 (La.1/14/94), 630 So.2d 1284, 1288-89.
In Elfert, this Court held that the delays occasioned by the defendants' attempts to secure counsel justified continuing trial set only two weeks before prescription was due to expire, whether the defendants themselves moved for a continuance or the court upset the trial date ex proprio motu for purposes of effectuating the defendants' Sixth Amendment right to counsel. We specifically observed that "[i]f the continuance was granted to permit [defendants] to secure an attorney of their choice, the period of limitation was suspended until such time as they made known to the court that they had employed counsel." Elfert, 175 So.2d at 828.
However, the continuance granted by the court in Elfert had the effect of upsetting the trial scheduled for that day, and we subsequently clarified that the delays occasioned by a defendant's efforts to secure *783 counsel do not invariably constitute grounds for suspension of the time limits for trial specified by La.C.Cr.P. art. 578 when they have not "affected the State's efforts to prosecute in any respect." State v. Carr, 271 So.2d 871, 872 (La.1973) (motion to withdraw by counsel did not suspend running of time limits); see also State v. Cooper, 389 So.2d 1124 (La. 1980)(same); State v. Garbo, 442 So.2d 685, 688 (La.App. 1st Cir.1983)(same); but see State v. Jones, 34,542, p. 6 (La.App. 2nd Cir.2/28/91), 780 So.2d 1234, 1239 (oral motion to withdraw suspended prescription). Respondent argues in this Court that the resetting of a status conference is not the equivalent of granting a continuance of trial, particularly in a case in which the state had not set a trial date until nearly three-quarters of the prescriptive period had already elapsed.
We agree with respondent to the extent that the resetting of status conferences may have no impact on a trial date and should therefore not invariably provide the state with an additional year in which to bring the defendant to trial. See Jones, 34,542 at 6, 780 So.2d at 1239 ("Although the status conference was continued, the trial date remained the same. This did not act as a suspension of time as it was not a preliminary plea."). Although Cummings had acted reasonably in delaying matters to accommodate Hearin in working out the details of representing respondent through a second trial, the attorney had formally enrolled in the case on March 22, 2000. Hearin was therefore in a position to convey her plea offer to respondent, and Cummings's uncertainty over the question of whether prosecution should proceed under the original or new bill of information, whether or not shared by Hearin, had no bearing on the selection of a trial date. Without regard to whether Hearin acquiesced in delaying the arraignment for a month while the state pondered its charging alternatives, the resetting of the status conference did not constitute a preliminary plea for purposes of La. C.Cr.P. art. 580 providing the state with an additional year to bring the case to trial because it had no apparent impact on the state's ability to prosecute the case.
However, we take an entirely different view of the proceedings conducted on June 20, 2000. Although a formal motion may not have been filed on that date, and it is not clear from the record when Damico formally enrolled as counsel for respondent, it is clear that the trial court continued the status conference and arraignment set for that day for purposes of providing respondent with the opportunity to substitute counsel for the missing Hearin. The continuance on that date, solely for purposes of effectuating respondent's Sixth Amendment right to counsel and to accommodate the confusion in the defense caused by Hearin's baffling disappearance, suspended the running of the time limits because the state's ability to prosecute the case was actually affected until the matter of representation was settled and respondent again had counsel. Louisiana imposes on a prosecutor the ethical duty to "[m]ake reasonable efforts to assure that the accused has been advised of the right to, and the procedure for obtaining, counsel, and has been given reasonable opportunity to obtain counsel ...." La. State Bar Ass'n Rules of Professional Conduct, Rule 3.8(b)(emphasis added); see also Model Rules of Prof'l Conduct R. 3.8(b). As a matter of that ethical constraint, the state could not push this case forward until the question of respondent's representation by counsel was settled. Cummings could not have communicated or bargained directly with respondent regarding her open plea offer while he was ostensibly still represented by Hearin although attempting *784 to retain other counsel, La. Rules of Professional Conduct, Rule 4.2; she could not have set a hearing on the open defense motion in limine which the First Circuit had directed the trial court to retry; nor, finally, could she have unilaterally set a trial date with any reasonable likelihood it would take place as scheduled to justify the issuing of subpoenas for the state's witnesses and preparing them for trial. The rapid pace with which plea negotiations were completed and a trial date was selected after Damico enrolled as respondent's counsel indicates that all this case needed in order to move forward in a manner consistent with the time limits imposed by La.C.Cr.P. art. 582 was a defense attorney.
Under these circumstances, we conclude that the continuance of the status hearing on June 20, 2000, on respondent's behalf, for purposes of allowing him to substitute other retained counsel for the inexplicably missing Hearin, constituted a preliminary plea within the scope of La.C.Cr.P. art. 580 and gave the state at least until June 20, 2001 to bring the case to trial. The trial court therefore properly denied respondent's motion to quash the prosecution. Accordingly, the decision of the First Circuit is reversed, the trial court's ruling denying the motion to quash is reinstated, as are respondent's conviction and sentence, and this case is remanded to the district court for execution of sentence.
DECISION OF THE COURT OF APPEAL REVERSED; RULING OF THE TRIAL COURT DENYING THE MOTION TO QUASH REINSTATED; RESPONDENT'S CONVICTION AND SENTENCE REINSTATED; CASE REMANDED.
NOTES
[1] Evidently, there existed some confusion concerning whether La.C.Cr.P. art. 598(A)(conviction for a lesser grade of the charged offense operates as an acquittal on all greater degrees of the crime) required the state to file another bill of information, this time charging defendant with manslaughter.
[2] The majority referred to the following exchange between the parties:

Hearin: There has not been a formal bill of information butand I guess we need aa thirtywhat do you want to do as far as him coming back?
DA: If we could just get a thirty-day date. We can get him arraigned when he comes back for status as well.
Clerk: What charge are y'all arraigning? There's no bill in thisI mean, there's a file.
DA: Right. He's going to be re-billed with manslaughter. This is the case that was appealed and then came back. So if we could just reassign this for about thirty days.
Clerk: You just want a status?
DA: Just put it in for status.