864 So.2d 824 (2003)
STATE of Louisiana
v.
Jon QUINONES.
No. 03-KA-907.
Court of Appeal of Louisiana, Fifth Circuit.
December 30, 2003.
*825 Hilary B. Taylor, Indigent Defender Board, Gretna, LA, for Appellant.
Paul D. Connick, Jr., District Attorney, 24th Judicial District Parish of Jefferson, State of Louisiana, Terry M. Boudreaux, Appellate Counsel, Andrea F. Long, Counsel of Record on Appeal, Ralph C. Cox, III, Donald A. Rowan, Jr., Trial Counsel, Assistant District Attorneys, Gretna, LA, for Appellee.
Panel composed of Judges EDWARD A. DUFRESNE, JR., JAMES L. CANNELLA and SUSAN M. CHEHARDY.
JAMES L. CANNELLA, Judge.
The Defendant, Jon Quinones, appeals from his conviction of carnal knowledge of a juvenile. We affirm the conviction, vacate the sentence and remand.
The Defendant, Jon Quinones, was charged by bill of information on August 2, 2000 with the carnal knowledge of a juvenile, a violation of La.R.S. 14:80. He was arraigned on August 9, 2000 and entered a plea of not guilty. Subsequently, the Defendant filed pretrial motions. On September 15, 2000 and September 29, 2000, the Defendant received open file discovery from the State and his discovery was satisfied.
Trial was initially scheduled for October 16, 2000, but was continued to October 30, 2000, pursuant to the Defendant's motion for continuance. When the Defendant did not appear for trial, the judge issued an attachment for his appearance and ordered the surety, Amwest Surety Insurance Company, to produce the Defendant in court on November 17, 2000. On November 17, 2000, the surety, the Defendant, and counsel failed to appear and the trial judge forfeited the Defendant's bond.
On May 23, 2001, the surety filed a Motion to Set Aside the Judgment of Bond Forfeiture, contending that the reason the Defendant failed to appear at trial was that he had been arrested on October 18, 2000 and incarcerated in Orleans Parish Prison, where he was held in the custody of the U.S. Marshall. On June 29, 2001, the trial judge set aside the bond forfeiture and reset the trial for July 30, 2001. The minute entry for June 29, 2001 states that the Defendant is in "Facility unknown at this time." On July 30, 2001, the rescheduled trial date, the Defendant's counsel moved for a continuance, which was granted by the trial judge. Another new trial date was set for August 13, 2001. Again, neither the Defendant nor his counsel appeared in court on the day of trial, and the trial judge ordered the prior attachment to remain outstanding.
On December 4, 2002, the Defendant filed a pro se "Motion to Dismiss and/or *826 Request for Fast and Speedy Trial."[1] In the motion, he alleged that a detainer letter had been forwarded to the Jefferson Parish Sheriff's Office advising of his whereabouts. He attached a copy of a Detainer Action Letter that had been issued by the Federal Bureau of Prisons on December 11, 2001, which indicated that the Defendant was being held in the Federal Correctional Complex in Beaumont, Texas. His expected date of release was in 2019.
In January of 2003, Defendant's private counsel filed a motion to withdraw from the case. On that same date, the State filed a Petition and Order for Writ of Habeas Corpus Ad Prosequendam. The motion to withdraw was granted in February of 2003 and the State's writ petition was granted in April of 2003. On June 24, 2003, the Defendant appeared in court and the trial judge recalled the outstanding attachment and appointed counsel to represent the Defendant.
On June 25, 2003, a hearing was held on the Defendant's pro se motion to quash, which the trial judge denied without reasons. On the same day, the Defendant advised the trial judge that he wanted to enter a negotiated plea of guilty to the charge, reserving his rights under Crosby,[2] to appeal the decision on the motion to quash. He was advised of his constitutional rights and executed a Waiver of Constitutional Rights form, which stipulated that he would receive a sentence of two years of imprisonment at hard labor, to be served concurrently and coterminously with the federal charges.[3] The State agreed not to file a habitual offender bill of information and the trial judge agreed to waive the sex crime registration requirement. The trial judge accepted the plea and sentenced the Defendant as agreed upon in the plea agreement. A written motion for appeal under Crosby was subsequently filed and granted.[4]
On appeal, the Defendant asserts that the trial judge erred in denying his motion to quash the bill of information for failure to timely proceed to trial. He also assigns patent errors.
The Defendant contends that the State failed to bring him to trial within two years, as required by La.C.Cr.P. art. 578, and thus, the bill of information should have been quashed. He alleges that he was unable to appear because he was incarcerated. The Defendant argues that the State should not be allowed to use his non-appearance as a basis for excusable delay of trial because it failed to show that it exercised due diligence in discovering his whereabouts, citing La.C.Cr.P. art. 579(A)(2), as interpreted by State v. Amarena, 426 So.2d 613 (La.1983).
The State responds that the Defendant's trial was timely because there are statutorily excused periods of time contained in the time between the commencement of prosecution and the Defendant's trial, citing La.C.Cr.P. arts. 580, 579(A)(3). The State argues that the time limitation was initially interrupted by the Defendant's failure to appear for trial on October 30, 2000, after he had received actual notice of the trial date. It contends that all the information in the record prior to that time, including an attempt at service indicated that the Defendant's whereabouts were unknown. Furthermore, the State *827 further alleges that, although the Defendant was being incarcerated in Texas on federal charges, this fact was unknown to the State until May 23, 2001, when such information appeared in a pleading filed by the Defendant's surety. The State notes that subsequently, when the Defendant filed his pro se motion to quash on December 4, 2002, the trial date was suspended until June 25, 2003 when the trial judge denied that motion.
In the case of a non-capital felony, the time limitation for commencement of trial is "two years from the date of institution of the prosecution." La.C.Cr.P. art. 578(2). The date of institution of prosecution is the date when the indictment is returned or the bill of information is filed. State v. Gladden, 260 La. 735, 257 So.2d 388 (1972), cert. denied, 410 U.S. 920, 93 S.Ct. 1377, 35 L.Ed.2d 581 (1973); State v. Watts, 99-57, p. 3 (La.App. 5th Cir.1999), 738 So.2d 628, 629. If the time limitation for trial expires and the defendant files a motion to quash before trial, the trial court shall dismiss the indictment and there shall be no further prosecution against the defendant for the same or a lesser offense based on the same facts. La.C.Cr.P. 581. La.C.Cr.P. art. 579 provides for the interruption of the time limitation, as follows:
A. The period of limitation established by Article 578 shall be interrupted if:
(1) The defendant at any time, with the purpose to avoid detection, apprehension, or prosecution, flees from the state, is outside the state, or is absent from his usual place of abode within the state; or
(2) The defendant cannot be tried because of insanity or because his presence for trial cannot be obtained by legal process, or for any other cause beyond the control of the state; or
(3) The defendant fails to appear at any proceeding pursuant to actual notice, proof of which appears of record.
B. The periods of limitation established by Article 578 shall commence to run anew from the date the cause of interruption no longer exists.
La.C.Cr.P. art. 580 provides that the time limitation is suspended when a defendant files a motion to quash or other preliminary plea. A preliminary plea is any pleading or motion filed by the defense which has the effect of delaying trial. State v. Brooks, 02-792, p. 2 (La.2/14/03), 838 So.2d 778, 782, reh'g denied, 02-792 (La.3/21/03). These pleadings include properly filed motions to quash, motions to suppress, or motions for a continuance, as well as applications for discovery and bills of particulars. Id.
In State v. Rome, 93-1221, p. 4 (La.1/4/94), 630 So.2d 1284, 1287, the Louisiana Supreme Court discussed the distinction between "interruption" and "suspension." The Court stated:
An interruption of prescription occurs when the state is unable, through no fault of its own, to try a defendant within the period specified by statute, in this case two years.... Once the cause of interruption disappears, the two-year time limit begins anew. See La.Code Crim.Proc.Ann. art. 579(B). In contrast, the prescriptive period is merely suspended, until the trial court rules on the filing of preliminary pleas. The relevant period is simply not counted, and the running of the time limit resumes when the motions are ruled on. Note, however, that "in no case shall the state have less than one year after the ruling to commence the trial." La.Code Crim. Proc.Ann. art. 580. (Footnote omitted)
When the defendant brings an apparently meritorious motion to quash the bill of information, the state bears a heavy *828 burden to demonstrate that the time limit has not been interrupted (under La. C.Cr.P. art. 579) or suspended (under La. C.Cr.P. art. 580). State v. Morris, 99-3235 (La.2/18/00), 755 So.2d 205 (per curiam); State v. Rome, 93-1221 at 3, 630 So.2d at 1286. However, the trial judge's denial of a motion to quash should not be reversed in the absence of a clear abuse of the trial court's discretion. State v. Love, 00-3347, p. 6 (La.5/23/03), 847 So.2d 1198, 1208.
In this case, the State instituted prosecution on August 2, 2000 by the filing a bill of information. Under La.C.Cr.P. art. 578, trial should have begun on or before August 2, 2002. However, trial was not commenced at that time. The hearing on the motion to quash and the subsequent plea bargain occurred on June 25, 2003. The minutes in the record reflect the following chronology of events:
August 2, 2000The Bill of information was filed.[5]
September 15, 2000The trial is set for October 16, 2000. The Defendant is present and has notice.
October 16, 2000 The trial date. The Defendant moves for a continuance. Trial is reset for October 30, 2000. The Defendant signs an order/notice on October 16, 2002 evidencing his knowledge that he is to appear for trial on October 30, 2000. [Prescription is suspended.]

October 17, 2000A subpoena is issued to the Defendant for trial, although he had actual notice.
October 24, 2000The return on the subpoena states that he is no longer at the address and cannot be served. [Prescription is now interrupted.]

October 30, 2000The Defendant fails to appear for trial, although he had notice. An attachment issues. The trial is reset for November 17, 2000. [Prescription continues to be interrupted.]

November 17, 2000Defendant and his counsel fail to appear for trial. A judgment of Bond Forfeiture is rendered. [Prescription continues to be interrupted.]

May 23, 2001The surety moves to set aside the forfeiture asserting that the Defendant was in federal custody in Orleans Parish Prison at the time of his non-appearance. [The State is put on notice of the Defendant's whereabouts. Interruption ends. The new prescriptive period begins and will end on May 23, 2003.]

July 30, 2001The hearing on the surety's motion. It is continued pursuant to the Defendant's request.
August 13, 2001The second date for the hearing on the surety's motion. The Defendant fails to appear. The attachment is continued in effect.
December 11, 2001A federal detainer letter is issued showing that the Defendant's incarceration in Beaumont, Texas.
December 4, 2002The Defendant files the motion to quash, attaching a copy of the detainer letter issued on December 11, 2001. [Prescription is suspended until the motion is decided.]

January 23, 2003Defense counsel files a motion to withdraw.
February 3, 2003The motion to withdraw is granted. The State files a Petition for Writ of Habeas Corpus ad Prosequendam.
April 3, 2003The State's writ is granted.
June 24, 2003The Defendant appears in court and counsel is appointed to represent him.

*829 June 25, 2003A hearing is held on the Motion to Quash, which is denied. The Defendant enters into a Crosby Plea.
In support of his argument that the State failed to use due diligence in locating the Defendant, he cites State v. Chadbourne, 98-1998, p. 2 (La.1/8/99), 728 So.2d 832. There the Louisiana Supreme Court noted that the state's burden of proof in establishing an interruption of the prescriptive period includes the duty to exercise due diligence in discovering the whereabouts of the defendant as well as in taking appropriate steps to secure his presence. In that case, the state knew less than two weeks after the state instituted prosecution in Jefferson Parish that the defendant had been arrested and incarcerated in Orleans Parish. The Court noted:
The state thereafter did not discharge its heavy burden of prosecuting the defendant within the applicable one-year time limit, La.C.Cr.P. art. 578(3), by assuming, without a single inquiry to the Department of Corrections, that the subsequent ex parte withdrawal of the detainer at defense counsel's request in March of 1995 meant that relator had been released from custody and thereby interfered with its ability to secure his presence at trial. The withdrawal of the detainer therefore did not serve to interrupt the running of the prescriptive period by May 9, 1998 ...
State v. Chadbourne, 98-1998, p. 1-2 (La.1/8/99), 728 So.2d 832, 832-833.
In this case, there is nothing in the record to support the Defendant's argument that the State knew or should have known in October of 2000, or anytime prior to May of 2001, that on October 18, 2000 the Defendant had been arrested and was incarcerated in Orleans Parish in the custody of federal authorities. And, we do not find Amarena dispositive of this issue. In that case, the state was well aware of the defendant's location during the two year prescriptive period. In Amarena, the defendant robbed a jewelry store in Louisiana and fled to California in an attempt to sell the stolen jewelry. During the investigation in California, the Louisiana authorities were notified of defendant's apprehension. He was arrested in California by federal authorities and imprisoned there. The authorities in Louisiana sought defendant's extradition. There was correspondence and a couple of writs of habeas corpus filed to secure the defendant's return. After a second writ of habeas corpus ad prosequendam was issued, the defendant was successfully returned to Louisiana for arraignment. The Louisiana arraignment occurred two years and nine months from the filing of the bill of information. Defendant moved to quash the bill of information under La.C.Cr.P. art. 579. The state argued that, under La. C.Cr.P. art. 579(2), the prescriptive period was interrupted because of the defendant's incarceration in California and because attempts to secure the defendant's presence had previously proved fruitless. The Louisiana Supreme Court rejected this argument because the whereabouts of the defendant were known to Jefferson Parish officials for more than two years and the defendant's presence in Louisiana was easily obtainable. The Court noted that, when the prosecution finally took the appropriate steps to obtain Amarena's presence in Jefferson Parish, he was promptly delivered. The Court also rejected the state's argument that the time limitation on his trial was interrupted simply because he was in prison outside the state, and beyond the control of the state. "The mere physical detention of the defendant in a state or federal prison will not alone serve to interrupt prescription." Amarena, 426 So.2d at 617. The present case is distinguishable from Amarena.
*830 In addition, we note that the cases under La.C.Cr.P. art. 579(A)(2) involving out of state incarceration turn on the actions taken by the state after it had actual knowledge of the defendants' locations.[6] If the state makes some effort "during the two-year prescriptive period to bring a defendant back to Louisiana for trial when he is incarcerated in another state, (even if extradition is not allowed), that action would arguably constitute an interruption under La.C.Cr.P. art. 579(A)(2)." State v. Manuel, 98-2175, p. 5 (La.App. 4th Cir.10/17/98), 720 So.2d 395, 397; State v. Groth, 483 So.2d 596 (La. 1986).
Based on the chronology of events in this case, the time limitation for the State to commence trial was interrupted in October of 2002. The State did not receive notice of the Defendant's whereabouts until May of 2001. There is nothing in the record to indicate that the State knew or should have known that the Defendant was incarcerated elsewhere. When the State was informed that the Defendant was incarcerated in a federal prison in Texas, the interruption ended and a new two year period commenced, which was subsequently suspended in December of 2002, when the Defendant filed his motion to quash. With the knowledge of the Defendant's whereabouts, the State then began the process to obtain the Defendant's presence for trial and the case proceeded timely. Thus, we find that the trial judge did not err in denying the motion to quash the indictment.

PATENT ERROR
The record was reviewed for patent error pursuant to La.C.Cr.P. art. 920, State v. Oliveaux, 312 So.2d 337 (La.1975) and State v. Perrilloux, 99-1314 (La.App. 5th Cir.5/17/00), 762 So.2d 198. We find the following error.
The Defendant was convicted of a sex offense as defined by La.R.S. 15:541(14.1).[7] The registration procedures to be followed by sex offenders are set out in La.R.S. 15:542. La.R.S. 15:543(A) requires the trial judge to provide written notification to a sex offender defendant of the registration requirement of La.R.S. 15:542. In this case, the trial judge did not provide the required written notice to the Defendant, apparently because the plea agreement contained a provision to waive the requirement. The State raises this issue in brief.
The duty to register under La.R.S. 15:540 et seq. is mandatory. La. R.S. 15:544. Thus, the agreement to waive this requirement creates an illegally lenient sentence. Under La.C.Cr.P. art. 882(A), the trial court that imposed the sentence or the appellate court on review may correct an illegally lenient sentence at any time, but the correction is not mandatory. La.C.Cr.P. art. 882(A).
In State v. Massey, 02-872, p. 7 (La. App. 5th Cir.2/11/03), 841 So.2d 862, writ denied, 03-805 (La.10/17/03), 855 So.2d 758, this Court refrained from correcting an illegally lenient sentence. In that case, the state did not raise the issue. The defendant had been convicted of possession *831 of cocaine and subsequently pled guilty to being a fourth felony offender, after negotiating a sentence of 15 years of imprisonment at hard labor. The mandatory sentence at the time was life imprisonment without benefit of parole, probation or suspension of sentence. The Court stated:
It is well established that the defendant does not have a constitutional or statutory right to an illegal sentence. State v. Williams, 00-1725, pp. 16-17 (La. 11/28/01), 800 So.2d 790, 797. We note that the Louisiana Supreme Court stated the following in State v. Campbell, 01-0329 (La.11/2/01), 799 So.2d 1136:
The appellate court should refrain from employing errors patent review to set aside guilty pleas about which the defendant makes no complaint and which resulted in disposition of the case favorable to the defendant.
Following that edict, we will not disturb defendant's sentence.
Massey, 02-872, p. 7 (La.App. 5th Cir.2/11/03), 841 So.2d at 865.
In State v. Chisley, 03-426, p. 9-10 (La. App. 5th Cir.10/15/03), 860 So.2d 45, the defendant was found guilty of possession of cocaine and later pled guilty to being a second felony offender. This was not raised by the defendant or the state, but on appeal, this Court noticed in the error patent review that the sentence of 20 years was illegally lenient because the sentencing range at the time of the underlying offense as a second felony offender was 60-120 years. There, the Court acknowledged the illegal leniency of the sentence and remanded the case to the district court for re-sentencing, reserving the defendant's right to withdraw his second offender guilty plea.
La.R.S. 15:540 A provides the public purpose for the sexual offender registration law. It states in part:
A. The legislature finds that sex offenders, sexually violent predators, and child predators often pose a high risk of engaging in sex offenses, and crimes against victims who are minors even after being released from incarceration or commitment and that protection of the public from sex offenders, sexually violent predators, and child predators is of paramount governmental interest. The legislature further finds that local law enforcement officers' efforts to protect their communities, conduct investigations, and quickly apprehend offenders who commit sex offenses and crimes against victims who are minors, are impaired by the lack of information available to law enforcement agencies about convicted sex offenders, sexually violent predators, and child predators who live within the agency's jurisdiction, and the penal and mental health components of our justice system are largely hidden from public view and that lack of information from either may result in failure of both systems to meet this paramount concern of public safety....
Because of the strong public policy expressed by the Legislature for registering sexual offenders, we are compelled to vacate the illegally lenient sentence and remand the matter to the trial court for resentencing in accordance with the sexual offender law. However, we reserve the Defendant's right to withdraw his guilty plea since it was predicated in part on the waiver.
Accordingly, we hereby affirm the Defendant's conviction. The sentence is vacated and the case remanded to the trial court for resentencing. The Defendant's right to withdraw his plea of guilty to the *832 crime of carnal knowledge of a juvenile is reserved.
CONVICTION AFFIRMED; SENTENCE VACATED, CASE REMANDED.
NOTES
[1] The motion was interpreted by all parties to be a Motion to Quash the Bill of Information for failure to timely proceed to trial.
[2] State v. Crosby, 338 So.2d 584 (La. 1976).
[3] The tentative federal release date is specified in the record as being October 23, 2019.
[4] The record is devoid of any facts relating to the carnal knowledge of the juvenile.
[5] Defendant was present for the next three hearing dates (i.e., arraignment and discovery) held on August 9, September 15 and September 29, 2000.
[6] See, State v. Devito, 391 So.2d 813 (La.1980) (after notice of out-of-state incarceration, failure to extradite timely); State v. Kraft, 501 So.2d 313 (La.App. 5th Cir.1987), writ denied, 505 So.2d 1140 (La.1987) (after notice of out-of-state incarceration, nothing done to secure presence or show presence unattainable); State v. Amarena, supra (no action for period of two years after defendant's presence known).
[7] The definitions of sex offenders previously contained in La.R.S. 15:542(E) were moved to La.R.S. 14:541(14.1) in Acts 2001, No. 1206.