BROWN, Chief Judge.
12After a two-day jury trial on November 13-14, 2006, defendant, Benjamin Wright, was convicted on 23 counts of possession of child pornography in violation of La. R.S. 14:81.1(A)(3). Thereafter, defendant was sentenced as follows: on Counts 1-12, and 23-24: concurrent terms of ten years at hard labor without benefit on each count; on Counts 14-22, concurrent terms of ten years at hard labor without benefit on each count, but to run consecutive with the cumulative sentence imposed for Counts 1-12 and 23-24, for a total sentence of 20 years, with credit for time served. Defendant now appeals, urging six assignments of error. We affirm.

Facts

On March 18, 2004, Wright was arrested pursuant to an arrest warrant for public intimidation of a child protection investigator. After defendant [awas arrested, a routine inventory search of his vehicle revealed 17 videotapes in the trunk, some of which were labeled as pornographic.
After a search warrant was obtained, closer inspection of the videotapes seized during defendant’s arrest revealed that many were pornographic, and some were of female customers changing clothes in the dressing room of defendant’s clothing store. Specifically, several videotapes contained footage of women and young girls changing clothes and in various stages of undress.[1]
These videotapes served as the basis for a second search warrant of defendant’s place of business for evidence of electronic devices for photographing unknown customers while in the dressing room or restrooms of the business without their consent, for tapes of past customers, and for any electronic devices used for editing, viewing and transmitting such images of unknown customers. A cursory search of a computer at the business revealed three different audio/video files of young girls involved in child pornographic acts. Electronic storage media (CDs and 3½ inch floppy disks) was found around the computer and in a private office area of the store. Also found in the back area was a piece of paper with a list of websites. All of these items were seized. A search of the dressing rooms at the store revealed that cameras had been present but had been removed.
*469 ^Officers then obtained a search warrant for a forensic search of the computer, monitor, media and electronic storage devices located at defendant’s business, and in the search, child pornography was discovered. Specifically, 24 images were found on two of the seized 3½ inch floppy disks. Certain websites were listed on paper found in'defendant’s private office. These sites were devoted to child pornography.
On May 10, 2004, defendant was charged by bill of information with 50 counts of possession of child pornography in violation of La. R.S. 14:81.1(A)(3). Counsel was appointed to represent defendant and he was arraigned and entered a plea of not guilty that same day. On February 7, 2005, the court heard.and denied a motion to suppress evidence seized during the search of defendant’s clothing store. On September 30, 2005, defendant’s court-appointed attorney made an oral motion to withdraw as counsel which was granted the same day. Another attorney was appointed to represent defendant. On April 26, 2006, defendant filed a pro se motion to quash the indictment alleging that charges against him should be dismissed for lack of prosecution pursuant to the delays provided in La. C. Cr. P. art. 532(7). After a contradictory hearing was held on June 26, 2006, this motion was denied.
|sOn July 7, 2006, the state filed an amended bill of information charging 24 counts of possession of child pornography in violation of La. R.S. 14:81.1 (A)(3). Defendant was arraigned on the amended bill and maintained his plea of not guilty. Defendant’s second appointed attorney made a motion to withdraw which was granted. The trial court appointed another attorney to represent defendant. Trial was then set for August 7, 2006; however, the trial court granted defendant’s request for a continuance on that date, despite opposition from the state. Accordingly, trial was reset for November 13, 2006. On October 18, 2006, defendant filed another pro se motion to quash the indictment for lack of prosecution. The trial court denied this motion.
On November 13, 2006, the case proceeded to trial. That morning, defendant filed a motion for change of venue. Jury selection took five- hours; several challenges for cause were granted by the trial court. The state used 6 peremptory challenges, and the defense used its allotted 12 peremptory challenges. The trial court supported its denial of defendant’s motion to change venue with extensive reasons. Thereafter, following presentation of testimony and evidence by both sides, the jury found defendant guilty as charged on Counts 1-12 and 14-24 and not guilty on Count 13. On February 21, 2007, defendant was sentenced as stated herein above.
| ^Defendant filed a pro se post-judgment motion for acquittal, motion for a new trial, and motion to reconsider/modify sentence, all of which were denied by the trial court. Following a writ to the supreme court, the trial court granted defendant’s motion for an out-of-time appeal. State ex. rel. Wright v. State, 09-1215 (La.03/26/10), 29 So.3d 1256.

Discussion

Sufficiency of the Evidence

According to defendant, the evidence failed to show that he intentionally possessed pornography involving children under the age of 17. He claims that because the information contained on the computer disk is virtually invisible to the naked eye, and meaningless unless decoded by way of an appropriate computer device, one could quite innocently possess a ¡disk containing child pornography and be completely unaware of its criminal content.
*470 As it read at the time of defendant’s arrest, La. R.S. 14:81.1(A) provided in pertinent part:
La. R.S. 14:81.1. Pornography involving juveniles
A. Pornography involving juveniles is any of the following:
[[Image here]]
|7(3) The intentional possession, sale, distribution, or possession with intent to sell or distribute of any photographs, films, videotapes, or other visual reproductions of any sexual performance involving a child under the age of seventeen.
Pornography involving juveniles is a general intent crime. See State v. Cinel, 94-0942 (La.11/30/94), 646 So.2d 309, cert. denied, 516 U.S. 881, 116 S.Ct. 215, 133 L.Ed.2d 146 (1995). General criminal intent is present when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act. La. R.S. 14:10(2). The words “intentional possession,” taken in their usual sense, mean that the individual knowingly and voluntarily possessed the pornography, in contrast to circumstances in which a person downloads images from the internet without realizing that some images included in the download were child pornography. State v. Horton, 42,199 (La.App.2d Cir.06/20/07), 962 So.2d 459, 466, writ denied, 07-1819 (La.01/25/08), 973 So.2d 755.
La. R.S. 14:81.1(E)(1), at the time of defendant’s arrest, provided that:
Whoever commits the crime of pornography involving juveniles shall be fined not more than ten thousand dollars and be imprisoned at hard labor for not less than two years or more than ten years, without benefit of parole, probation, or suspension of sentence.
La. R.S. 14:81.1(G) provided at the time of defendant’s arrest that:
|sIn prosecutions for violations of this Section, the trier of fact may determine, utilizing the following factors, whether or not the person displayed or depicted in any photograph, videotape, film, or other video reproduction introduced into evidence was under the age of seventeen years at the time of filming or recording:
(1) The general body growth, bone structure, and bone development of the person.
(2) The development of pubic or body hair on the person.
(3) The development of the person’s sexual oi'gans.
(4) The context in which the person is placed or the age attributed to the person in any accompanying video, printed, or text material.
(5) Available expert testimony and opinion as to the chronological age or degree of physical or mental maturity or development of the person.
(6) Such other information, factors, and evidence available to the trier of fact which the court determines is probative and reasonably reliable.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, 01-1658 (La.05/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Carter, 42,894 (La.App.2d Cir.01/09/08), 974 So.2d 181, writ *471 denied, 08-0499 (La.11/14/08), 996 So.2d 1086.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Speed, 43,786 (La.App.2d Cir.01/14/09), 2 So.3d 582; State v. Parker, 42,311 (La.App.2d Cir.08/15/07), 963 So.2d 497.
The state must prove several elements to establish the offense of possession of pornography involving juveniles. First, that the victim was under 17 years of age. Second, that the offender had general criminal intent to possess materials depicting sexual performances involving a person or persons under the age of 17. Third,, that the offender knew or should have known that the victim was under 17 years of age. State v. Cinel, supra.
| inViewed in the light most favorable to the prosecution, we find that the evidence is sufficient to support defendant’s conviction on all counts. First, Dr. Ann Springer, an expert in pediatric and child abuse medicine, testified that the 24 photographs depicted children under the age of 17 engaged in various sexual situations with adult males. Dr. Springer stated that the 24 photographs had been chosen from a much larger collection of photos because they most conclusively showed juveniles under the age of 17. She based her conclusions concerning the age of the victims on the physical developmental characteristics of each child, such as whether the victim -had breast development, pubic hair, or the ability to maintain an erection. She explained to the jury exactly which physical developmental characteristic(s) led her to the conclusion that each exhibit depicted a child under the age of 17 as it was introduced into evidence Furthermore, six of the children were specifically identified by Matthew Wright of the Bossier-Webster District Attorney’s Office as being listed in the database of the National Center for Missing and Exploited Children database as victims of child pornography.
Second, the state proved defendant’s intentional possession and knowledge that the computer disk contained child pornography. Matthew Wright stated that the images on the computer disks reflected a conscious or willful act by one to save the images onto the disk. Specifically, Wright Instated, “there has to be an effort to put the disk into the floppy drive of the computer and to select the photographs which they choose to put on there, to click save or save as to the floppy disk, and at that point it’s placed on there. There’s got to be an effort to put a photo on a disk.” When asked whether the images could have appeared accidentally, 24 times on two different 3½ inch floppy disks, Wright answered “no.” To connect defendant to the disks, testimony was presented to the jury that in addition to containing. child pornography, some of the seized floppy disks contained defendant’s business records. Moreover, evidence regarding the list of web sites which were devoted to child pornography that was found in defendant’s office was presented to the jury as well. Taken as a whole, the evidence was sufficient to show that defen *472 dant did not accidentally download the images or “innocently possess a disk containing child pornography” but, rather, that he intentionally and knowingly possessed the photographs containing pictures of children under the age of 17.

Denial of Motion for Change of Venue

In this assignment of error, defendant contends that the trial court erred in failing to grant his motion for change of venue based upon his claim of extensive and prejudicial pretrial publicity. At trial, defendant submitted a variety of printed materials to the trial court in support of his motion for a |12change of venue. The materials included several stories about the incident in the local media, as well as evidence of the likely circulation or coverage of the stories. However, the court opted to consider the motion after the completion of voir dire in order to get an accurate impression of the impact of the media coverage on the venire.
La.C.Cr. P. art. 622 provides that:
A change of venue shall be granted when the applicant proves that by reason of prejudice existing in the public mind or because of undue influence, or that for any other reason, a fair and impartial trial cannot be obtained in the parish where the prosecution is pending.
A defendant must prove more than mere public general knowledge or familiarity with the facts of the case to have his trial moved to another parish. State v. Lee, 05-2098 (La.01/16/08), 976 So.2d 109, cert. denied, — U.S. -, 129 S.Ct. 143, 172 L.Ed.2d 39 (2008); State v. Frank, 99-0553 (La.01/17/01), 803 So.2d 1. There is no bright line test for determining the degree of prejudice existing in the collective mind of the community. The defendant must show the extent of prejudice in the minds of the community as a result of such knowledge or exposure to the case before trial. State v. Frank, supra; State v. Clark, 02-1463 (La.06/27/03), 851 So.2d 1055.
|1SA defendant is not entitled to a jury entirely ignorant of his case and cannot prevail on a motion for change of venue merely by showing a general level of public awareness about the crime. State v. Lee, supra; State v. Clark, supra. Several factors which are pertinent in determining whether actual prejudice exists, thus rendering a change in venue necessary, include: (1) the nature of pretrial publicity and the degree to which it has circulated in the community; (2) the connection of government officials with the release of the publicity; (3) the length of time between the publicity and the trial; (4) the severity and notoriety of the offense; (5) the area from which the jury is to be drawn; (6) other events occurring in the community which either affect or reflect the attitude of the community or individual jurors toward the defendant; and (7) any factors likely to affect the candor and veracity of the prospective jurors on voir dire. State v. Lee, supra. Also, jurisprudence shows that courts have examined the number of jurors excused for cause for having a fixed opinion as another gauge of whether prejudice exists in the public mind. State v. Lee, supra; State v. Clark, supra.
The news reports of this incident included information that: (1) the instant case arose when defendant allegedly threatened to kill a child protection agent; (2) when the police stopped defendant to arrest him for the threat, they found videos of children undressing in his store; (3) upon 114searching the store, the police allegedly found child pornography; (4) defendant was charged with several counts of possession of child pornography; and (5) defendant was previously convicted of two counts of carnal knowledge of a juvenile and three counts of video voyeurism. *473 None of the news accounts of this incident were particularly inflammatory. Instead, the news accounts were largely concerned with a recounting of the facts’ of the event and, later with the fact that charges had been brought against defendant. The parties conducted extensive examination of the prospective jurors concerning the influence that these accounts would have on their ability to remain impartial.
During voir dire 33 prospective jurors were questioned and 23 indicated that they had heard something concerning the case. A 12-person jury was selected after five hours of voir dire. Only -one prospective juror stated that she had formed an opinion and that it was “not very strong.” More specifically, out of the first voir dire panel of 12, 7 of the jurors had heard something about the case: Crystal Duncan, Jerold Jones, Yolanda Theus, Eric Walker, Leonard Reeves, Gina Reeme, and Glendon Wallace. After further questioning, Ms. Duncan stated that what , she had heard and read about the case was that defendant had video cameras in his dressing room and this was “always going to be in [her] mind.” However, she stated that [1sshe would be able to be neutral because she had no prior knowledge or information after she was told that the instant charges had nothing to do with defendant videotaping people in his dressing rooms. (Ms. Duncan served on the jury.) Jones said he had read about the case. Specifically, Jones related that the prior knowledge he had was concerning cameras in the dressing rooms of defendant’s store. He felt that he could set this aside and decide the case solely on the evidence presented in court. (Jones served on the jury.) Ms. Theus stated that she had heard snippets of gossip about the case (that it was about child pornography) and maintained it would have no impact on her decision. (Ms. Theus served on the jury.) Walker heard and read about the case in the media and had discussed it with fellow employees at work. However, he maintained that he had not formed an opinion on the issue of guilt, particularly since what he had heard and read about was related to cameras in defendant’s dressing rooms. (Walker was excused by a peremptory challenge filed by defendant.) Ms. Reeme heard a news report but believed she could decide the case on the evidence. (Ms. Reeme was excused by a peremptory challenge filed by both the state and defense.) Reeves stated that he knew “what everyone here knows (about cameras in the dressing rooms of defendant’s store), what’s on television and what’s been in the paper.” He noted that it had “been on the news every day[.]” J^Reeves stated that he considered what he heard tp be the reporters’ opinions, which to .him didn’t amount to anything. (Reeves was excused by a peremptory challenge filed by defendant.) Wallace stated that he had heard on the news and read in the paper that the trial was starting and there were 20-some-thing counts. His thought was, “Uh oh, that’s going to start in Minden and I’ve got jury duty.” (A challenge for cause filed by defendant was granted as to Wallace.)
In the next voir dire group of seven, four had heard about the case: Shirley Kemp, Judy Grubbs, Glean Moore, and Leevorn Walter. Walter stated that the media had reported that defendant had been convicted on three counts, received a 25 year sentence, etc. Walter stated that he believed that he could put that knowledge aside in deciding this case because this was a “totally different thing.” (Walter served on the juryO 'Ms. Moore had heard that pornographic tapes were found at the store involving defendant and a Ms. Morris and that as a result Ms. Morris lost her children. She believed that she could be fair nonetheless. (The state used a peremptory challenge on Ms. Moore.) Ms. *474 Grubbs remembered reading about defendant’s first arrest and his moving his business and getting caught with some tapes in his car. According to Ms. Grubbs, she could be fair. (The defense used a peremptory challenge on Ms. Grubbs.) Ms. Kemp learned about the case- “off the street 117and from the newspaper.” Most of what she heard was from lots of people who go to his store. Specifically, Ms. Kemp heard that defendant was taking pictures of young ladies in his dressing rooms. (The state used a peremptory challenge on Ms. Kemp.) ■
In the next voir dire group of four, two potential jurors had heard about the case: Krystal Tatro and Garry Pope. Pope stated that' he saw something in the paper but didn’t know the details and believed that he could be fair. (Defendant filed a peremptory challenge against Pope.) Ms. Ta-tro stated that she knew “somebody that was a juror on one of the last trials, one of their mothers, ... and she told me a lot about it, and I read up a lot about it in the newspaper ...” Ms. Tatro stated that she would have a problem being fair and impartial. (The court granted a challenge for cause for Ms. Tatro.)
In the next voir dire group of four, three people had heard about the case: Darlena Wesley, Daniel Tesnow and Wayne Priest. Ms. Wesley stated that she learned about the case from gossip and the newspaper and was “a little bit” biased against defendant as a result. (The state filed a challenge for cause against Ms. Wesley alleging that she had a close relationship with defendant and his mother based upon years of doing business with them. This challenge was granted by the court based upon Ms. Wesley’s response during voir dire that she did not believe that she could vote to convict 11sdefendant.) Priest saw “a little bit in the paper and heard a little bit on the news.” Specifically, what Priest had read/heard was that the case was making its way through the court system. (The state filed a peremptory challenge against Priest.) Tesnow “breezed through” an article in the newspaper about the seizure of some hard drives but didn’t think it would affect his ability to fairly and impartially judge the evidence. (Tes-now served on the jury.)
In the next voir dire group of three, two had heard about the case: Johnny Farmer and Henry Lester. Farmer stated that he had heard that the case involved cameras or peepholes in a dressing room. (Farmer served on the jury.) Lester stated that he read that after defendant’s first conviction he got arrested again for pornographic material involving juveniles. Lester felt that he could be a fair and impartial juror. (Lester served on the jury.)
In the next group, only one name was drawn. Linda Montgomery stated that she had read about the case in the newspaper and on television. (A challenge for cause filed by defendant was granted based upon Ms. Montgomery’s initial response during voir dire that she had already formed an opinion in this case.)
In the next group, again only one juror’s name was drawn. Peggy Pedroza stated that she read about the case in the newspaper. Specifically, | i9she remembered something about video cameras in the dressing rooms. Ms. Pedroza stated that she could be fair and impartial. (Ms. Pe-droza served on the jury.) The only alternate subjected to voir dire, Lindsay Sampson, stated that she had not read or heard anything about the case. (Ms. Sampson served as the alternate.)
After consideration of the evidence and argument of counsel, the trial court determined that a fair and impartial jury had been selected and denied defendant’s motion for a change of venue. Before denying defendant’s venue motion, the trial *475 court noted that 33 jurors were questioned during voir dire. Of the 33, 13 persons, or about 39% of the jury pool, had heard absolutely nothing about the case. The court observed that it granted three defense challenges and one state challenge for cause based upon juror knowledge or opinion. The court further stated that of the remaining jurors who had heard something about defendant’s case, they had little recall. The court opined that while there had been publicity concerning this case, it had not risen to the level of being so inflammatory that defendant could not receive a fair trial in this venue. The court further stated that it felt that the jurors selected by both defense counsel and the prosecutor could be fair and impartial.
|2nWe find no error in this ruling and observe that there were 8 jurors who had some prior knowledge of this case and served on the jury. None of them were challenged, for cause or peremptorily, by either side.

Denial of Pro Se Motion to Represent Self

In his first pro se assignment of error, defendant argues that the trial court erred by denying defendant’s pro se motions to represent himself on October 25, 2004, September 30, 2005, and July 26, 2006. According to defendant, the trial court’s denial of his motions amounted to a violation of his Sixth Amendment right to represent himself.
Both the Louisiana and federal constitutions guarantee a criminal defendant’s right to the assistance of counsel. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); State v. Campbell, 06-0286 (La.05/21/08), 983 So.2d 810, cert. denied, — U.S. -, 129 S.Ct. 607, 172 L.Ed.2d 471 (2008); State v. Brooks, 452 So.2d 149 (La.1984). A defendant may elect to represent himself if the choice is knowingly and intelligently made and the assertion of the right is clear and unequivocal. Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); State v. Campbell, supra; State v. Yates, 44,391 (La.App.2d Cir.07/01/09), 15 So.3d 1260. Whether a defendant has knowingly, intelligently, and unequivocally asserted the right to self-representation must be determined on |21a case-by-case basis, considering the facts and circumstances of each case. State v. Leger, 05-0011 (La.07/10/06), 936 So.2d 108, 147-48, cert. denied, 549 U.S. 1221, 127 S.Ct. 1279, 167 L.Ed.2d 100 (2007). Requests that vacillate between self-representation and representation by counsel are equivocal. Id.
After reviewing the trial court record, we find no merit to defendant’s argument. The record does not reveal that defendant ever made a clear and unequivocal request to the trial court, either personally or through his trial counsel, to represent himself. More specifically, the record does not contain any written motion by or on behalf of defendant requesting self representation, nor does it contain such a ruling from the trial judge granting such a request. Similarly, the minute entries for the dates that defendant refers to do not show that a motion for him to proceed pro se was addressed at a pretrial hearing. If anything, the record reflects that defendant wished to be represented by counsel as he indicated to the trial court at one point during a pretrial proceeding that he would pay for his own attorney. Later, defendant filed a motion to proceed in forma pauperis, thus entitling himself to a court-appointed indigent defender. Although the record is replete with pleadings filed by defendant pro se, as well as pleadings filed by his court-appointed counsel, there are no minute entries, written motions, or rulings by *476 | ¡athe trial court indicating that defendant attempted to exercise his right to self representation. This pro se assignment of error is meritless.

Violation of State’s Evidentiary Obligation

In his second pro se assignment of error, defendant takes issue with the fact that it took “2 years 3 months to send the computer and floppy dis[ks] to the Lab.” He argues that the trial court’s introduction of the floppy disks into evidence was in violation of the state’s obligation “to present timely evidence.” He also argues that the custody receipt for the evidence seized during the search of his store “shows no floppy dis[ks] being seized as evidence.” As a result, he questions “where did the pictures come from.”
During cross-examination, Matthew Wright, who worked in the D.A.’s office, testified that although the floppy disks were seized in March 2004, he did not examine them until July 2006. No explanation was given for the delay. No evidence was presented during trial that there were any chain of evidence issues. Moreover, defendant’s contention that the custody receipt for the evidence seized during the search of his store does not show that any floppy disks were seized is incorrect. Officer Tucker’s March 18, 2004, handwritten list of items seized from defendant’s store specifically states that “assorted CDs and 3½ floppy disks” were seized.
This assignment of error is without merit.
| ^Denial of Motion to Quash
In his third pro se assignment of error, defendant argues that the trial court erred by denying his motion to quash the first indictment on June 26, 2006. According to defendant, the time limitations for prosecution passed and the trial court should have dismissed the case.
La. C. Cr. P. art. 578(A)(2) provides in pertinent part that, except as otheiwise provided in this chapter, no trial shall be commenced in other felony cases after two years from the date of institution of the prosecution. Subpart (B) provides that the offense charged shall determine the applicable limitation.
La. C. Cr. P. art. 579(A)(2) provides, in pertinent part, that the period of limitation established by La. C. Cr. P. art. 578 shall be interrupted if the defendant cannot be tried because of insanity or because his presence for trial cannot be obtained by legal process, or for any other cause beyond the control of the state.
La. C. Cr. P. art. 579(B) provides that the periods of limitation established by Article 578 shall commence to run anew from the date the cause of interruption no longer exists. La. C. Cr. P. art. 580 provides that when a defendant files a motion to quash or other preliminary plea, the running of the periods of limitation established by Article 578 shall be 1 ^suspended until the ruling of the court thereon; but in no ease shall the state have less than one year after the ruling to commence the trial.
In the context of this case, “institution of prosecution” occurred upon the filing of the bill of information, which was on May 10, 2004. La. C. Cr. P. art. 934(7); see, State v. Butler, 302 So.2d 585 (La.1974). Therefore, absent interruption or suspension, the state had until May 10, 2006, to commence trial.
A preliminary pleading is any pleading or motion filed by the defense which has the effect of delaying trial. State v. Brooks, 02-792 (La.02/14/03), 838 So.2d 778. These pleadings include properly filed motions to quash, motions to *477 suppress, or motions for a continuance, as well as applications for discovery and bills of particular. Id.
Defendant was initially charged on May 10, 2004, by bill of information with multiple counts of possession of pornography involving juveniles, a violation of La. R.S. 14:81.1(A)(3), and a felony. Defendant’s motion to quash was filed on April 27, 2006, which was prior to the two-year time limitation set forth in La.C.Cr.P. art. 578. The trial court’s ruling on this motion was on June 26, 2006. Thereafter, not even considering further defense pleadings and motions filed in the interim which would have further suspended or interrupted the time limitation for commencement ofjjgtrial, the state had until June 26, 2007, to bring defendant to trial under the first bill of information. An amended bill of information was filed on July 27, 2006, and trial commenced on November 13, 2006. Thus, defendant’s trial commenced timely, and the trial court properly denied the April 27, 2006, motion to quash. This assignment of error is without merit.

Denial of Motion for Pretrial Discovery

In his final pro se assignment of error, defendant argues that the trial court erred by failing to grant his oral motion for discovery before trial. According to defendant, this denial of his motion resulted in his not having complete access to the evidence against him before trial.
La. C. Cr. P. art. 718 provides:
Subject to the limitation of Article 723, on motion of the defendant, the court shall order the district attorney to permit or authorize the defendant to inspect, copy, examine, test scientifically, photograph, or otherwise reproduce books, papers, documents, photographs, tangible objects, buildings, places, or copies or portions thereof, which are within the possession, custody, or control of the state, and which:
[[Image here]]
(2) are intended for use by the state as evidence at the trial....
La. C. Cr. P. Art. 721 provides:
Upon motion of the defendant, the court shall order the district attorney to inform the defendant of the state’s intent to use statements |2r,of coconspirators pursuant to Louisiana Code of Evidence Article 801(D)(3)(b).
La. C. Cr. P. Art. 722 provides:
Upon motion of the defendant, the court shall order the district attorney to permit or authorize the defendant to inspect and copy, photograph or otherwise reproduce any relevant written or recorded confessions or inculpatory statements made by a co-defendant and intended for ■ use' at trial. Exculpatory evidence shall be produced under this article even though it is not intended for use at trial.
The record reveals that defense counsel made an oral motion for discovery during a pretrial hearing on May 10, 2004. The trial court denied the oral motion and instructed defendant’s attorney to file a written motion for discovery. Defense counsel complied with the trial court’s ruling and filed a written motion for discovery on May 13, 2004. The May 13, 2004, written motion requested exculpatory evidence and also sought to inspect and copy the photographs at issue in the case. On October 1, 2004, the trial court granted defendant’s discovery motion, but because the evidence against defendant consisted of pornographic photographs of juveniles, ordered that defense counsel attorney only be allowed to view the photographs at the courthouse.
This assignment of error has no merit. Although the trial court denied the oral motion for discovery, it was within *478 the court’s sound discretion to order that the motion be in writing. Furthermore, defense counsel was given |27access to the discovery materials almost two years before trial, so his argument that he was somehow denied “complete access to evidence against him before trial” is merit-less.

Conclusion

Defendant’s conviction and sentence are affirmed.

. In a separate trial, Wright also was convicted of three counts of video voyeurism. Wright was sentenced to serve five years' imprisonment at hard labor on count one, ten years on count two and ten years on count three without benefit, with the sentences to be served concurrently. We affirmed the convictions but vacated the sentences and remanded for resentencing. State v. Wright, 40,945 (La.App.2d Cir.05/19/06), 931 So.2d 432, writ denied, 06-1727 (La.03/16/07), 952 So.2d 694.