# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**24-552**

**STATE OF LOUISIANA**

**VERSUS**

**WILLIE J. STEVENS, SR.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 20686-18
HONORABLE BOBBY LYNN HOLMES, JR., DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**CANDYCE G. PERRET**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Shannon J. Gremillion, Candyce G. Perret, and Gary J. Ortego, Judges.

**REVERSED AND REMANDED.**

**Hon. Elizabeth Baker Murrill**
**Attorney General**
**Assistant Attorneys General**
**Tasha K. Stockwell**
**J. Taylor Gray**
**P.O. Box 94005**
**Baton Rouge, LA 70804-9005**
**(225) 326-6210**
**COUNSEL FOR APPELLANT:**
    **State of Louisiana**

**Wilford D. Carter**
**Attorney at Law**
**1025 Mill Street**
**Lake Charles, LA 70601**
**(337) 564-6990**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Willie J. Stevens, Sr.**

**Joshua O. Monroe**
**Public Defenders Office**
**120 W. Pujo Street, Ste. 300**
**Lake Charles, La 70602**
**(337) 436-1718**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Willie J. Stevens, Sr.**

**PERRET, Judge.**

The State of Louisiana appeals the trial court's judgment granting the second motion to quash the indictment of Defendant, Willie James Stevens, Sr. For the following reasons, we reverse and remand for proceedings consistent with this opinion.

**FACTS AND PROCEDURAL HISTORY:**

On November 29, 2018, Defendant was charged by grand jury indictment with one count of first degree rape, a violation of La.R.S. 14:42. On December 7, 2021, the Defendant filed a motion to quash based on prescription, which was granted on January 13, 2022. The State appealed the trial court's ruling, and this court reversed, holding the two-year prescriptive period for the State to commence trial was interrupted by the closure of the trial court due to Hurricane Laura:

> Thus, the court closure due to Hurricane Laura constitutes a "cause beyond the control of the state" under La.Code Crim.P. art. 579(A)(2) and [*State v.*] *Simmons*, [22-208 (La.App. 3 Cir. 10/19/22),] 350 So.3d 599. The two-year prescriptive period for commencing trial was interrupted on August 27, 2020. Even if the two-year prescriptive period began running anew on the same day Hurricane Laura made landfall, and even if the various suspensions are not calculated, the state had until at least August 27, 2022, to bring the defendant to trial. At the time the defendant filed his motion to quash on December 7, 2021, the state had at least 263 days to bring him to trial. It is, therefore, unnecessary to calculate the periods of suspension. The motion to quash was premature, and the trial court erred in granting the motion.

*State v. Stevens*, 22-746, p. 14 (La.App. 3 Cir. 4/5/23), 364 So.3d 560, 570–71.

On appeal, Defendant argued that if this court found the prescriptive period was interrupted by Hurricane Laura, then La.Code Crim.P. art. 579 was unconstitutional as applied to him. This court refused to address the issue as it was raised for the first time on appeal.

On remand, Defendant filed a second motion to quash on January 10, 2024, challenging the constitutionality of La.Code Crim.P. arts. 579 and 580. The trial court set the matter for hearing on June 26, 2024, on which date Defendant filed a supplemental motion to quash considering *State v. Mouton*, 23-723 (La. 5/10/24), 384 So.3d 845. At the hearing, the trial court granted the supplemental motion to quash, finding the two-year prescriptive period for bringing Defendant to trial had expired:

> And I do believe that *Mouton* is instructive. I think they had to go and they had to fix the law, and I would venture to say had *Mouton* been out when Judge Kee heard the initial Motion to Quash, the State would have lost.
>
> This Court is of the same opinion. I do believe -- first, to address the Motion to Disqualify counsel, the State is in charge of the docket, Article 61. That motion could have been reurged at any time during this -- there's a total of 943 days, but I find -- I do -- I will not impute to you anything that your previous counsel did not do prior to you leaving [sic]. It appears she filed the motion but never had it heard. And that motion could have been docketed and heard at any time. And that, in some way, prejudices the defendant because with an outstanding motion, you cannot proceed to a jury trial without that motion being heard.
>
> I do find that in reading the briefs and -- well, motions more particularly that 943 has passed. And even taking out the suspensive time relative to the COVID delays, Hurricanes Laura and Delta, Supreme Court actions and government proclamations were well outside of the two-year time period by which to try this case.
>
> The Court would grant the Motion to Quash, as the Court believes that is the appropriate finding in this particular matter. I just think we ran out of time. The clock ran out on this particular deal. And so, that would be the ruling of the Court. I find that in keeping with 578, 579 that more than two years have elapsed since the indictment, keeping in mind even with all of the suspensions as *Mouton* contemplated with the Louisiana Supreme Court. I would make a record, even though the Third Circuit remanded to talk about constitutionality, I think *Mouton* is instructive and the Court would treat it as -- would take judicial notice of that as a part of making its ruling in this particular case. And so, that would be the ruling of the Court subject to any objections.

The State is now before this court appealing the trial court's ruling. The underlying facts of the case are not pertinent, as the issue on appeal is prescription. Additionally, in accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find there are no errors patent.

**ASSIGNMENT OF ERROR NUMBER ONE:**

The State contends that the prescriptive period for bringing Defendant to trial had not run when he filed his original motion to quash on December 7, 2021. Additionally, the State contends that the trial court's inquiry at the subsequent June 26, 2024 hearing should not have ended with its determination that the decision in *Mouton*, 384 So.3d 845, made the delays from Hurricane Laura operate as a suspension rather than an interruption of the time limitation. Even considering those delays as suspensions, the State contends that when Defendant filed his motion to quash on December 7, 2021, the case had not prescribed "nor would it thereafter."

The time limit for commencement of trial in this case was two years from the date the prosecution was instituted on November 29, 2018. La.Code Crim.P. art. 578(A)(2). Interruptions and suspensions of the two-year time period are governed by La.Code Crim.P. arts. 579 and 580:

**Art. 579.    Interruption of time limitation**

A. The period of limitation established by Article 578 shall be interrupted if:

(1) The defendant at any time, with the purpose to avoid detection, apprehension, or prosecution, flees from the state, is outside the state, or is absent from his usual place of abode within the state; or

(2) The defendant cannot be tried because of insanity or because his presence for trial cannot be obtained by legal process, or for any other cause beyond the control of the state; or

3

(3) The defendant fails to appear at any proceeding pursuant to actual notice, proof of which appears of record.

B. The periods of limitation established by Article 578 shall commence to run anew from the date the cause of interruption no longer exists.

C. If the defendant fails to appear in court pursuant to any provision of this Article and the defendant is subsequently arrested, the periods of limitations established by Article 578 of this Code shall not commence to run anew until the defendant appears in person in open court where the case on the original charge is pending, or the district attorney prosecuting the original charge has notice of the defendant's custodial location. For purposes of this Paragraph, "notice" shall mean either of the following:

(1) Filing in the court record by either the defendant or his counsel advising the court of his incarceration with a copy provided to the district attorney and certification of notice provided to the district attorney.

(2) Following the seventy-two hour hearing provided by Article 230.1 of this Code, actual notice of arrest is provided to the district attorney and filed in the record of the proceeding of which the warrant against the defendant was issued.

## Art. 580. Suspension of time limitations

A. When a defendant files a motion to quash or other preliminary plea, the running of the periods of limitation established by Article 578 shall be suspended until the ruling of the court thereon; but in no case shall the state have less than one year after the ruling to commence the trial.

B. The periods of limitation established by Article 578 shall also be suspended if the court grants a continuance in accordance with the provisions of Paragraph B of Article 709.

Additionally, La.Code Crim.P. art. 958, which became effective June 11, 2020,

provides in pertinent part:

A. Notwithstanding any provision of law to the contrary, if the governor has declared a disaster or emergency pursuant to the provisions of R.S. 29:721 et seq. or a public health emergency pursuant to R.S. 29:760 et seq., the supreme court is authorized to issue an order, or series of orders as it determines to be necessary and appropriate, that shall have the full force and effect of suspending all time periods, limitations, and delays pertaining to the initiation, continuation,

4

prosecution, defense, appeal, and post-conviction relief of any prosecution of any state or municipal criminal, juvenile, wildlife, or traffic matter within the state of Louisiana including but not limited to any such provisions in this Code, the Children's Code, and Titles 14, 15, 32, 40, and 56 of the Louisiana Revised Statutes of 1950, or in any other provision of Louisiana law, for a determinate period of thirty days except as otherwise provided by this Article.

B. The thirty-day period provided for in this Article shall commence to run from the date the supreme court issues the order or from a particular date specified by the supreme court in the order, whichever is earlier.

C. The thirty-day period provided in Paragraph A of this Article may be extended by further order of the supreme court for additional successive periods with each period not exceeding thirty days.

D. The period of suspension authorized by the provisions of this Article shall terminate upon order of the supreme court or upon termination of the declared disaster, emergency, or public health emergency, whichever is earlier.

. . . .

F. Nothing in this Article shall be construed to negate or impair the application of any other provision of law regarding the suspension or interruption of time periods, limitations, or delays.

"[A] preliminary plea is any pleading or motion filed by the defense which has the effect of delaying trial." *State v. Brooks*, 02-792, p. 6 (La. 2/14/03), 838 So.2d 778, 782. Preliminary pleas include "properly filed motions to quash, motions to suppress, or motions for a continuance, as well as applications for discovery and bills of particulars." *Brooks*, 838 So.2d at 782. Joint motions to continue are also included as preliminary pleas, while motions to reduce bond, motions for speedy trial, and motions to continue status conferences that do not affect the trial date are not. *State v. Bessard*, 20-84 (La.App. 3 Cir. 11/18/20), 307 So.3d 1158; *State v. Barnett*, 50,213 (La.App. 2 Cir. 8/2/15), 174 So.3d 748; *State v. Tillman*, 43,569 (La.App. 2 Cir. 10/22/08), 997 So.2d 144, *writ denied*, 08-2836 (La. 9/25/09), 18 So.3d 85. "After the trial court rules on the motion, the state has either the remainder

5

of the time limitations *or* a minimum period of one year from the date of ruling in which to commence trial, whichever time is longer." *State v. Thomas*, 51,346, p. 9 (La.App. 2 Cir. 6/21/17), 223 So.3d 759, 765 (emphasis added), *writ denied*, 17-1264 (La. 3/9/18), 237 So.3d 523; *See State v. Morris*, 99-3235 (La. 2/18/00), 755 So.2d 205.

"Once the accused shows that the state has failed to bring him to trial within the time periods specified by La.C.Cr.P. art. 578, the state bears a heavy burden of demonstrating that either an interruption or a suspension of the time limit tolled prescription." *Morris*, 755 So.2d at 205.

On appeal, the applicable standard for reviewing a ruling on a motion to quash is as follows:

> Because the complementary role of trial courts and appellate courts demands that deference be given to a trial court's discretionary decision, an appellate court is allowed to reverse a trial court judgment on a motion to quash only if that finding represents an abuse of the trial court's discretion. **State v. Love**, 00-3347, pp. 9-10 (La. 5/23/03), 847 So.2d 1198, 1206. However, the trial court's legal findings are subject to a de novo standard of review.

*State v. Gray*, 16-687, pp. 3–4 (La. 3/15/17), 218 So.3d 40, 43.

The following is a list of relevant events that occurred in this case.

**November 29, 2018:** A Calcasieu Parish grand jury indicted Defendant, charging him with one count of first-degree rape, in violation of La.R.S. 14:42(A)(6).

**December 5, 2018:** Assistant Public Defender King Alexander filed motions for discovery and bill of particulars on behalf of Defendant.

**December 10, 2018:** The State filed a Discovery USB 1 List, certifying that it contained all the discovery available at that time. Mr. Alexander acknowledged receipt of all discovery materials. On motion of the State, a pre-trial conference was fixed for March 4, 2018.

**December 18, 2018:** The State filed a motion for discovery and additionally filed a formal response to Defendant's motion for discovery stating that all discovery was provided on the USB

previously provided to the defense. The State provided an initial witness list and indicated that it did not, at that time, anticipate offering any evidence of other crimes. The State also filed a response to Defendant's motion for bill of particulars.

**June 13, 2019:** In open court, in the presence of the State and defense counsel Mr. Alexander, the trial date was set for February 18, 2020.

**January 8, 2020:** Private defense counsel, Mr. Carter, filed a motion to enroll as counsel, a motion for discovery, and a motion for bill of particulars.

**January 9, 2020:** The State filed a written response to defense counsel's motions for discovery and bill of particulars.

**January 27, 2020:** A hearing on a motion for bond reduction previously filed by Mr. Carter, who was initially absent from court and had not yet met Defendant. After a recess, Mr. Carter made his first court appearance. The State notified the district court of a potential conflict of interest with Mr. Carter's representation of Defendant. Mr. Carter advised the court he did not agree that there was a conflict and requested Defendant be first on the priority list for trial on February 18, 2020. If not, he indicated he would file a motion for speedy trial. It was determined that discovery motions were previously set for March 9, 2020. Mr. Carter acknowledged that discovery had been provided, except for evidence concerning DNA, which the State advised there was none. Mr. Carter indicated that he was ready to go to trial and stated he would be lead counsel, and Mr. Alexander would handle constitutional challenges. The State indicated it would file a motion on the conflict of interest issue, and Mr. Carter indicated he would file a motion for speedy trial. On motion of the defense, with agreement by the State, bond was reduced from $100,000 to $60,000.00.

**January 28, 2020:** Mr. Alexander filed a "Motion to Declare Louisiana's 10-2 Verdict Laws Unconstitutional as Applied to Verdicts of Conviction" (with attachments), and the court ordered it set for contradictory hearing on February 18, 2020.

**February 11, 2020:** The State filed a motion to continue the initial trial date setting on February 18, 2020 "[b]ecause of a number of preliminary matters which both sides wish to resolve prior to trial . . . ." This motion asserted that all counsel of record were contacted and indicated no opposition to the request for continuance. The State requested the trial be reset for the "mutually agreed upon date of September 21, 2020."

**February 12, 2020:** The trial court granted the State's continuance, resetting the trial to the "September 21, 2020 trial week docket."

7

**February 18, 2020:** The initial date for trial as well as for the pending defense motion filed by Mr. Alexander. The matter was removed from the docket and reset for September 21, 2020.[1]

**March 2, 2020:** The State filed a "Motion to Disqualify Defense Counsel" (Mr. Carter) due to a conflict of interest as he served on the board of directors for the school where the crime occurred. The district court ordered a hearing set for September 21, 2020.

**March 16, 2020:** Louisiana Supreme Court ordered all jury trials scheduled to commence between this date and March 27, 2020, be continued to a date to be reset by local order no earlier than March 30, 2020.[2]

**March 16, 2020**: Governor's Emergency Proclamation suspended all legal deadlines, including those set forth in the Louisiana Code of Criminal Procedure, until at least April 13, 2020. These provisions extended from 12:00 a.m. on March 17 to April 13, 2020, unless terminated sooner. (Proclamation # JBE 2020-30).

**March 20, 2020**: Louisiana Supreme Court ordered all civil and criminal jury trials scheduled to commence between March 20 and April 13, 2020, be continued to a date reset by local order no earlier than April 14, 2020.

**March 23, 2020**: Louisiana Supreme Court ordered that its prior orders from March 16 (amended March 20, 2020) were to remain in effect but were further restricted to comply with guidelines set forth by the Center for Disease Control, President Trump, and Governor Edwards.[3]

**March 26, 2020:** Fourteenth Judicial District Court issued an order that all provisions as directed by the Louisiana Supreme Court were to remain in full force and effect.

**April 2, 2020:** Governor's Emergency Proclamation suspended all legal deadlines, including those set forth in the Louisiana Code of Criminal Procedure, until at least April 30, 2020. These provisions were effective from April 2 to April 30, 2020, or as extended by any subsequent proclamation, unless terminated sooner. (Proclamation # 41 JBE 2020).

---

[1]We note that the State provided this information; we were not able to locate a minute entry or any document associated with this date.

[2]This order language is from the Louisiana Supreme Court's website and varies from the order language included in this court's opinion in *Simmons* and *Stevens*.

[3]This order language is from the Louisiana Supreme Court's website and varies from the order language included in this court's opinion in *Simmons* and *Stevens*.

**April 6, 2020:** Louisiana Supreme Court repealed and replaced its prior orders from March 16 and March 20, 2020, and ordered that all civil and criminal jury trials set to commence between April 6 and May 1, 2020, be continued to a date set by local order no earlier than May 4, 2020. The time periods of such continuance were to be excluded from speedy trial computations, including those in the Louisiana Code of Criminal Procedure.[4]

**April 9, 2020:** Fourteenth Judicial District Court issued an order that all provisions as directed by the Louisiana Supreme Court were to remain in full force and effect.

**April 20, 2020:** United States Supreme Court issued its opinion in *Ramos v. Louisiana*, 590 U.S. 83, 140 S.Ct. 1390 (2020), declaring non-unanimous jury verdicts unconstitutional.

**April 22, 2020:** Louisiana Supreme Court ordered that no civil or criminal jury trials were to commence before June 30, 2020, and all provisions of its April 6, 2020 order remained binding except as expressly modified.

**April 29, 2020:** Louisiana Supreme Court ordered all provisions of its April 6, 2020 order (as modified on April 22, 2020) to remain in effect except as expressly modified.[5]

**April 30, 2020:** Governor's Emergency Proclamation suspended all legal deadlines, including those set forth in the Louisiana Code of Criminal Procedure, until May 15, 2020. The provisions of the order were effective from May 1 to May 15, 2020. (Proclamation # 52 JBE 2020).

**April 30, 2020 and May 1, 2020:** Fourteenth Judicial District Court issued orders that all provisions as directed by the Louisiana Supreme Court were to remain in full force and effect.

**May 14, 2020:** Governor's Emergency Proclamation suspended all legal deadlines, including those set forth in the Louisiana Code of Criminal Procedure, until June 5, 2020. The provisions of the order were effective from May 15 to June 5, 2020, or as extended by any subsequent proclamation, unless terminated sooner. (Proclamation # 59 JBE 2020).

---

[4] This order language is from the Louisiana Supreme Court's website, and we note that it was not included in this court's opinion in *Simmons* and *Stevens*.

[5] This order language is from the Louisiana Supreme Court's website, and we note that it was not included in this court's opinion in *Simmons* and *Stevens*.

**May 15, 2020:** Louisiana Supreme Court repealed and replaced the April 6, April 22, and April 29, 2020 orders and ordered that no civil or criminal jury trials were to commence before June 30, 2020.

**June 4, 2020:** Governor's Emergency Proclamation suspended all legal deadlines, including those set forth in the Louisiana Code of Criminal Procedure until June 15, 2020. The provisions were effective from June 5 to June 26, 2020, or as extended by any subsequent proclamation, unless terminated sooner. (Proclamation # 75 JBE 2020).

**June 5, 2020:** Louisiana Supreme Court ordered that all provisions of its May 15, 2020 order were to remain in effect except as expressly modified. The time periods of such continuance were to be excluded from speedy trial computations, including those in the Louisiana Code of Criminal Procedure.

**June 11, 2020:** Louisiana Code of Criminal Procedure Article 958 was enacted.

**August 21, 2020:** The governor declared a state of emergency due to Hurricane Laura.

**August 27, 2020:** Hurricane Laura made landfall as a Category 4 storm.

**September 2, 2020:** Fourteenth Judicial District Court issued an order that it would stay closed until further notice due to damage caused by Hurricane Laura.

**September 2, 2020:** Louisiana Supreme Court issued an order authorizing the Fourteenth Judicial District Court to hold emergency sessions of court beginning on September 2, 2020. Part 2 of the order stated that all the time periods and delays in all criminal proceedings were to be suspended for ninety days commencing on September 2, 2020, unless further extended or shortened.

**September 9, 2020:** Louisiana Supreme Court issued an emergency order suspending all time periods, limitations, and delays pertaining to the initiation, continuation, prosecution, defense, appeal, and post-conviction relief of any prosecution within twenty-one parishes, including Calcasieu Parish. The suspended period commenced on August 21, 2020, and lasted thirty days. The order further rescinded Part 2 of its September 2, 2020 order suspending time limitations in Calcasieu Parish for ninety days and replaced it with the time limitation above.

**September 21, 2020:** The Defendant was set for trial and contradictory hearings on two outstanding motions. These did not occur due to the court's closure.

**September 22, 2020:** Louisiana Supreme Court issued an emergency order suspending all time periods, limitations, and delays pertaining to the initiation, continuation, prosecution, defense, appeal, and post-conviction relief of any prosecution within eight parishes, including Calcasieu Parish. The suspension commenced on September 21, 2020, and was for thirty days.

**January 6, 2021:** The District Attorney's Office notified the Attorney General that the Defendant had been set for trial on November 8, 2021. The State notified all counsel of record via email.[6]

**January 11, 2021:** Louisiana Supreme Court ordered that no civil or criminal jury trials were to commence before March 1, 2021. The time periods of such continuance were to be excluded from speedy trial computations, including those in the Louisiana Code of Criminal Procedure.

**February 11, 2021:** Louisiana Supreme Court ordered that no civil or criminal jury trials were to commence before April 1, 2021. The time periods of such continuance were to be excluded from speedy trial computations, including those in the Louisiana Code of Criminal Procedure.

**November 8, 2021:** In open court, Mr. Carter advised the court that a motion regarding the victim's IQ would be taken up by Mr. Alexander. Mr. Monroe, standing in for Mr. Alexander, indicated that the defense had no objection to the motion being continued. On the State's motion, the court ordered the motion refixed for December 7, 2021, and trial refixed for January 24, 2022.

**December 7, 2021:** Defendant appeared in court and waived Mr. Carter's presence for the purpose of a continuance only, which the court granted. On the State's motion, trial was maintained for January 24, 2022, and the clerk's office was to notify Mr. Carter. The defense, through Mr. Monroe, notified the court that the State's motion to disqualify had not been ruled upon. The court indicated it would rule on the motion on January 24, 2022. The same day, Mr. Carter filed a motion to quash the indictment, and the Court ordered it set for hearing on February 10, 2022, after the previously set trial date (January 24, 2022).

**January 13, 2022:** The District Court granted Defendant's motion to quash and ordered the State's pending motion to disqualify be dismissed as moot.

**February 7, 2022:** The State filed a motion for appeal.

---

[6] This information was provided in the State's brief.

**February 23, 2022:** The District Court granted the State's motion for appeal and set the return date for May 7, 2022.

**April 5, 2023:** This court reversed the district court's ruling and remanded the matter to the trial court for further proceedings. *Stevens*, 364 So.3d 560.

**September 7, 2023:** Because the matter had not been put on the docket following this court's reversal and remand, the State filed a motion to set the matter for a status/pre-trial conference.

**September 14, 2023:** The District Court ordered the matter be set for a status/pre-trial conference on October 26, 2023.

**October 26, 2023:** Court minutes indicate Mr. Carter appeared in court and made statements to the court. On motion of the State, the court ordered the State's "Motion to Disqualify Defense Counsel" and the "Motion to Declare Louisiana's 10-2 Verdict Laws Unconstitutional as Applied to Verdicts of Conviction" fixed for hearing at 10:00 a.m. on January 10, 2024.

**January 10, 2024:** According to the State, when it arrived at 10:00 a.m., counsel learned that Mr. Carter appeared an hour earlier, filed a second motion to quash, called the matter up without the Attorney General's Office present, and requested the court continue the hearing on motions, which it refixed for June 26, 2024. Court minutes indicate that two Assistant District Attorneys were present in court; however, there was no Assistant Attorney General. Mr. Carter filed a motion to quash and requested a hearing date, which, prompted by one of the ADAs, was fixed for June 26, 2024, at 9:00 a.m., along with the "State's Motion to Disqualify Defense Counsel." The clerk's office was to notify the Assistant Attorney General.

**May 10, 2024:** The Louisiana Supreme Court issued an opinion in *Mouton*, 384 So.3d 845, which held that Hurricane Laura suspended, but did not interrupt, prescription.

**June 26, 2024:** Defendant's motion to quash and the State's "Motion to Disqualify Defense Counsel" were set for hearing. Prior to the presentation of arguments, Mr. Carter filed a supplemental motion to quash in open court. Both sides presented arguments. The district court granted the motion to quash and deemed the "Motion to Disqualify Defense Counsel" moot.

**July 26, 2024:** The State filed a motion to reconsider, or in the alternative, a motion for appeal.

**July 29, 2024:** The District Court denied the motion to reconsider and granted the motion for appeal.

*State's Argument*:

The State set forth its calculation of the prescriptive period in support of its position that Defendant's December 7, 2021 motion to quash was filed prior to the expiration of the time period for bringing him to trial. From the filing of the indictment on November 29, 2018, the State initially had until November 29, 2020, to bring Defendant to trial. The delay between the December 5, 2018 filing of the defense's motions for discovery and bill of particulars until both were satisfied on December 18, 2018, added an additional thirteen days.[7] Defendant's second motion for discovery and bill of particulars was filed January 8, 2020, and satisfied the following day. This would extend the deadline one day; however, under La.Code Crim.P. art. 580, the State had no less than one year from the ruling to commence the trial, January 9, 2021. Thus, the State's position is that its deadline was then January 9, 2021.

On January 28, 2020, the defense filed a motion challenging Louisiana's non-unanimous jury laws which were not ruled on by the trial court. On April 20, 2020, in *Ramos*, 590 U.S. 83, the United States Supreme Court held that non-unanimous jury verdicts are unconstitutional. According to the State, this "mooted" Defendant's motion as of that day or served as a ruling, giving the State until April 20, 2021, to bring Defendant to trial.

In 2020, COVID shutdowns resulted in a suspension of time from March 16 through June 30, 2020, a total of 106 days. Thus, the State contends it then had until August 4, 2021, to bring Defendant to trial. Hurricane Laura and its aftermath caused

---

[7]We note that the State provided its answer to discovery on December 10, 2018, by providing a USB containing all discovery available at that time. On December 18, 2018, the State filed a "formal response" to the motion for discovery essentially stating that all discovery was contained on the previously provided USB. However, on that day, the State also filed a response to Defendant's motion for bill of particulars.

13

a suspension of sixty days, from August 21 to October 20, 2020, bringing the deadline to October 3, 2021.

Further COVID shutdowns in early 2021 by the Louisiana Supreme Court resulted in another suspension from January 11, 2021, to April 1, 2021, adding another eighty days, which brought the trial deadline to December 22, 2021. Thus, the State contends that Defendant's December 7, 2021 motion to quash was premature due to suspensions, an issue not addressed by this court in the prior appeal as it found the delay caused by Hurricane Laura was an interruption of the time period. The State additionally notes that on November 7, 2021, a continuance was granted on motion of the State, but the continuance was based at least in part on the representation of defense counsel that the defense would be filing a motion regarding the victim's competency. As a joint continuance (a preliminary plea), the State's position is that the deadline for bringing Defendant to trial then became November 8, 2022.

The State continues its argument by noting the granting of the motion to quash was appealed, and on April 5, 2023, this court reversed and remanded for further proceedings, giving the State until April 5, 2024, to bring Defendant to trial. Prior to that time, on January 10, 2024, the defense filed its second motion to quash.

*Defendant's Argument*:

In opposition, Defendant seems to have no issue with the State's position regarding the suspension of the time limitation from events which occurred until the trial deadline reached January 9, 2021. However, Defendant contends his January 28, 2020 filing challenging the constitutionality of non-unanimous jury verdicts did *not* delay the trial date as it was not a preliminary plea, noting that in his motion he indicated he was "proceed[ing] in the approved manner for preserving the

14

constitutional issues for such time as they may ripen to proper justiciability." Without this associated suspension, Defendant maintains that adding the sixty-day "hurricane shutdown" and the eighty-day "second COVID shutdown," the State's deadline was September 12, 2021, well before the filing of his December 7, 2021 motion to quash.

Alternatively, if this constitutional challenge *did* suspend the time limitation, Defendant contends that the State fails to take into account the thirty-six day overlap of this time period and the "first COVID suspension" of March 16 to April 20, 2020. According to Defendant, if that overlap is removed, the State's deadline was November 16, 2021, prior to the filing of his December 7, 2021 motion to quash.

*Analysis*:

"After the trial court rules on the motion, the state has either the remainder of the time limitations or a minimum period of one year from the date of ruling in which to commence trial, whichever time is longer." *State v. Thomas*, 223 So.3d at 765; *See Morris*, 755 So.2d 205. We find the defense's January 28, 2020 motion to declare Louisiana's non-unanimous jury verdict laws unconstitutional *did* act as a preliminary plea in this case even though the defense maintained then and now that the challenge was being made solely to preserve the right to raise the issue.[8] In the motion, the defense acknowledged the need to preserve the issue for appeal and also noted that the Louisiana Supreme Court had consistently held that courts should refrain from deciding constitutional issues unless they are essential to the case's adjudication. The motion further acknowledged that the return of a unanimous

[8]The motion stated that "The Louisiana Supreme Court has held that preservation for appeal of a constitutional challenge to a state statute requires its particularization within the four corners of a written pretrial motion served on the Attorney General and actually litigated."

15

verdict or an acquittal would prevent the issue from ripening. Accordingly, the defense stated it chose prematurity over waiver.

The motion also sought to have Defendant's future jury instructed that all twelve must concur to render a verdict. Additionally, in conclusion, the defense requested a contradictory hearing and a declaration by the trial court that La.Code Crim.P. art. 782(A) and La.Const. art. 1, § 17 were "unconstitutional to the extent they provide[d] for any non-unanimous verdict of conviction or any jury instruction so directing." In response to the motion, the trial judge set the matter for hearing on February 18, 2020, which was later reset to September 21, 2020. Before the hearing occurred, the *Ramos* decision was handed down. We find that this motion acted as a preliminary plea suspending the time limitation until the ruling was issued in *Ramos*, which served as an implicit ruling granting Defendant's January 28, 2020 motion.

The State originally had two years from November 29, 2018, or until November 29, 2020, to bring Defendant to trial. The filing of Defendant's December 5, 2018 motion for bill of particulars/motion for discovery until the satisfaction of same on December 18, 2018, added thirteen days, or until December 12, 2020. Then, the filing of Defendant's January 8, 2020 motions for discovery and bill of particulars until the satisfaction of same the following day added one day, but the State had no less than one year from that time to bring Defendant to trial, or January 9, 2021. The Defense's January 28, 2020 filing of a "Motion to Declare Louisiana's 10-2 Verdict Laws Unconstitutional as Applied to Verdicts of Conviction" to the implicit ruling on the motion by the issuance of the *Ramos* opinion on April 20, 2020, added an additional eighty-three days and brought the new trial deadline to April 2, 2021, but the State had no less than one year from that ruling, or April 20, 2021, to bring Defendant to trial.

Whether the COVID 2020 and 2021 closures should be included in the time computation is at issue in this case. In *Mouton*, the supreme court did *not* include any COVID closures in calculating the running of the prescriptive period. *Mouton* originated in this court with the issuance of the following writ ruling:

> **WRIT GRANTED AND MADE PEREMPTORY:** On August 17, 2022, Defendant filed a motion to quash wherein she alleged the State failed to bring her to trial within the time limitations for trials under La.Code Crim.P. art. 578. On August 27, 2020, the two-year prescriptive period was interrupted by the court closure in Jefferson Davis Parish due to Hurricane Laura's landfall. *State v. Simmons*, 22-208 (La.App. 3 Cir. 10/19/22), 350 So.3d 599, *writ denied*, 22-1622 (La. 2/7/23), 354 So.3d 675. Even if the two-year prescriptive period began running anew on August 27, 2020, the State had until August 27, 2022, to bring Defendant to trial. *See* La.Code Crim.P. art. 579. Thus, at the time Defendant filed her motion to quash on August 17, 2022, the time for commencing trial had yet to expire.
>
> Accordingly, the State's writ application is granted, the trial court's ruling is vacated, and this matter is remanded for further proceedings.

*State v. Mouton*, 22-650 (La.App. 3 Cir. 4/21/23) (unpublished opinion).

Mouton filed a writ application in the supreme court taking issue with this court's "peremptory finding that the 'court closures in Jefferson Davis Parish due to Hurricane Laura's landfall' interrupted the time limitations and mooted the issue of the Motion to Quash." Noting that the catastrophic effects felt in Calcasieu Parish (as discussed in *Simmons*) were not experienced in Jefferson Davis Parish, defense counsel prayed that the supreme court would vacate this court's ruling and "remand [the] case for the District Court to make a record with regard to whether there was in fact a disruption of the Jefferson Davis Parish Criminal Court that should interrupt the time limitations under the Code of Criminal Procedure." Alternatively, if the supreme court did not vacate this court's ruling and reinstate the trial court's ruling, defense counsel asked that the case be remanded to this court for consideration of

the "actual issues in the record with regard to the question of whether the District Judge abused his discretion in granting the Motion to Quash."

On review, the supreme court held:

> The court of appeal relied on its prior decision, *State v. Simmons*, 2022-0208 (La.App. 3 Cir. 10/19/22), 350 So.3d 599, *writ denied*, 2022-1622 (La. 2/7/23), 354 So.3d 675. In *Simmons*, the court held that the orders issued by this Court to address the effects of Hurricane Laura[3]—orders that explicitly *suspended* the limitation period—''should not change the legislature's statutory provision that a cause beyond the control of the State *interrupts* prescription.'' *Id*., 2022-0208, p. 21, 350 So.3d at 611 (referring to La.C.Cr.P. art. 579(A)(2)). In so ruling, the court relied, in part, on *State v. Bibbins*, 2014-0971 (La. 12/8/14), 153 So.3d 419 (per curiam), where this Court held that Hurricane Isaac interrupted the two-year limitation period to bring defendant to trial. In *Bibbins*, this court cited *State v. Patin*, 2011-0488 (La. App. 4 Cir. 5/23/12), 95 So.3d 542 and *State v. Brazile*, 2006-1611 (La. App. 4 Cir. 5/30/07), 960 So.2d 333, *writ denied*, 2007-1339 (La. 1/7/08), 973 So.2d 733, where the Fourth Circuit found that Hurricane Katrina interrupted the limitation period to bring the defendants to trial.

> Critically, those cases preceded the legislature's 2020 enactment of La.C.Cr.P. art. 958, empowering this Court to issue short, 30-day orders of suspension of "all time periods, limitations, and delays pertaining to the initiation, continuation, prosecution . . . of any prosecution of any state . . . criminal . . . matter . . ." in the event "the governor has declared a disaster or emergency pursuant to the provisions of R.S. 29:721 *et seq*." It was on that basis that this Court issued orders in 2020 addressing courts impacted by Hurricane Laura, including those in Jefferson Davis Parish where this case was prosecuted. The *Simmons* holding that the court closure *interrupted* the limitation period effectively rendered moot the legislatively authorized orders issued by this Court that the limitation period be *suspended*. In that regard, the *Simmons* decision was incorrect when it was decided, and the court of appeal erred in applying it to this case. Accordingly, we conclude the Third Circuit erred in finding that the court closure related to Hurricane Laura interrupted the time limitation under La.C.Cr.P. art. 579 when legislatively authorized orders from this Court ordered the time limitations suspended.

> This Court's orders suspending the limitation period gave the State 60 additional days to bring defendant to trial, or until August 23, 2021.[4] Nearly a year after that date, when defendant filed the motion to quash, the State had not commenced trial. Thus, the trial court properly granted defendant's motion to quash due to untimely prosecution, and the Third Circuit erred in overturning that decision. For these reasons,

we reverse the ruling of the court of appeal and reinstate the trial court's grant of the motion to quash.

_____

[3]*See*, *supra*, note 1.

[4]When defendant requested and was granted a continuance on June 24, 2020 (less than one year before the expiration of the two-year period on June 13, 2021) the State was permitted a year from that date to commence trial pursuant to La.C.Cr.P. art. 580, or until June 24, 2021. Thus, adding the 60 days from the suspension of the limitation period due to Hurricane Laura, brings the deadline to commence trial to August 23, 2021.

*Mouton*, 384 So.3d at 850 (alterations in original).[9]

The supreme court performed a time calculation before reinstating the trial court's ruling granting the motion to quash as opposed to remanding to this court for it to consider Hurricane Laura closures a suspension rather than an interruption of the time limitations. In doing so, it mentioned neither the 2020 nor the 2021 COVID orders.

In this case, we must now consider the supreme court and governor's COVID orders that were issued in 2020 and 2021. In *Simmons*, the prosecution was instituted on February 5, 2019, making the original trial deadline February 5, 2021. The defendant moved to continue the case on June 30, 2020, which extended the trial deadline to June 30, 2021. The defendant acknowledged that two (August 28, 2020, and September 22, 2020) supreme court orders due to Hurricane Laura acted to suspend the prescriptive period by sixty days, making the new trial deadline August

_____

[9]Footnote one, which was mentioned in footnote four, stated:

On August 27, 2020, Hurricane Laura made landfall in Louisiana. Thereafter, this Court issued two orders suspending all time limitations pertaining to the prosecution of criminal matters in multiple parishes, including Jefferson Davis Parish. The orders commenced on August 21, 2020, and expired on October 21, 2020. *See* La.S.Ct. Orders 2020-28, 2020-32.

*Id.* at 846.

31, 2021, prior to the September 3, 2021 filing of his motion to quash.[10] The State contended that the defendant failed to include the COVID jury trial moratoriums issued by the supreme court on January 11, 2021, and February 11, 2021, which suspended prescription until April 1, 2021. According to the State, this extended the trial deadline to November 18, 2021.

The 2020 supreme court and governor's COVID orders were included in this court's timeline in *Simmons*, and near the close of the opinion, after having determined that the January and February 2021 supreme court orders applied to the defendant's case, this court stated:

> *Governor's Emergency Proclamations*
>
> Although not argued by the State in either in the trial court or on appeal, we note the governor also issued several Covid-related proclamations that suspended the time period in this case. Specifically, effective March 17, 2020, Governor Edwards ordered that legal deadlines, including those set forth in the Louisiana Code of Criminal Procedure, were suspended until at least April 13, 2020. (Proclamation Number JBE 2020-30). Thereafter, effective April 2, 2020, Governor Edwards ordered that these legal deadlines be suspended until at least April 30, 2020. (Proclamation Number 41 JBE 2020). Then, effective May 1, 2020, Governor Edwards again suspended these legal deadlines until May 15, 2020, and effective May 15, 2020, the delays were suspended until June 5, 2020. (Proclamation Numbers 52 JBE 2020 and 59 JBE 2020). Finally, effective June 5, 2020, Governor Edwards suspended the pertinent legal delays until June 15, 2020. (Proclamation Number 75 JBE 2020). These suspensions totaled ninety days. As with several other issues previously discussed, this issue was not raised in the trial court. Since it is a purely legal question, however, and something this court can take judicial notice of, we find the governor's orders suspended the time period to commence Defendant's trial by ninety days.
>
> Accordingly, the time period for commencing trial was also suspended by the ninety-day period, therefore, the August 31, 2021 deadline alleged by Defendant was extended by ninety days. Thus, at

---

[10]The defendant argued that sixty days from June 30, 2021 was August 28, 2021, and August 29, 2021, was a Sunday. The following day, August 30, 2021, Calcasieu Parish courts were closed due to Hurricane Ida. Thus, the defendant argued that Tuesday, August 31, 2021, was the last day the State could call the matter for trial.

the time of the motion to quash (September 3, 2021), the time period would not have expired, also warranting a reversal of the trial court's grant of Defendant's motion to quash.

*State v. Simmons*, 22-208, pp. 18–19 (La.App. 3 Cir. 10/19/22), 350 So.3d 599, 612, *writ denied*, 22-1622 (La. 2/7/23), 354 So.3d 675, *and abrogated by State v. Mouton*, 23-723 (La. 5/10/24), 384 So.3d 845.

Running simultaneously with the governor's orders was Defendant's *Ramos* motion (January 28, 2020 to April 20, 2020). As discussed above, the State was given no less than one year from the ruling, or April 20, 2021, to bring Defendant to trial. Thus, the eighty-three days the *Ramos* motion was pending would not be considered, but the fifty-six days between the *Ramos* ruling and the end of the COVID closure would (April 20, 2020 to June 15, 2020). That would bring the trial deadline to August 14, 2021, a Saturday, so the deadline would be August 16, 2021, the following Monday.

The 2021 COVID moratorium resulted from supreme court orders dated January 11, 2021, and February 11, 2021. In *Simmons*, 350 So.3d at 607–08 (emphasis in original), this court stated:

> Although the State asserted that the supreme court's orders were "outside the control of the State," the State did not argue to the trial court that these orders *interrupted* prescription. Rather, the State argued that the seventy-nine-day time period of the jury trial moratorium constituted a suspension that should be added to the August 31, 2021 expiration date calculated by defense counsel. Thus, the State argued that it had until November 18, 2021, to commence trial (a date beyond the September 3, 2021 motion to quash filed by Defendant).
>
> Defendant argued, both in the trial court and in his response brief, the wording used in these two orders indicates the suspended time period applied only to those cases that had jury trials scheduled to commence during the moratorium period. Earlier COVID orders issued by the supreme court on March 16, 2020, March 20, 2020, and April 6, 2020, all stated that "All jury trials, both civil and criminal, scheduled to commence in any Louisiana state court between" the affected dates, "are hereby continued to a date to be reset by local order no earlier than"

the order's expiration date. The January 11, 2021 Order states, in pertinent part (emphasis added):

> IT IS HEREBY ORDERED THAT:
>
> 1. Jury Trials: **No civil or criminal jury trial shall commence** in any Louisiana state court before March 1, 2021. Civil and criminal jury trials that are in progress as of the date of this Order may continue to conclusion, in the discretion of the local court.
>
> 2. Speedy Trial Computations: Given the public health concerns and the necessity of taking action to slow the spread of the disease, **the continuances occasioned by Section 1 of this Order serve the ends of justice and outweigh the best interest of the public and the defendant in a speedy trial. Therefore, the time periods of such continuance shall be excluded from speedy trial computations pursuant to law,** including but not limited to those set forth in the Louisiana Code of Criminal Procedure and the Louisiana Children's Code, and presumptively constitute just cause.

On February 11, 2021, the supreme court issued an identical Order extending the moratorium on jury trials to April 1, 2021. Since Defendant's trial was not scheduled to take place during the moratorium caused by these two orders, staff submits it appears the suspended period would not have applied to Defendant. In its brief, the State attempts to counter this by contending that "[t]he net effect of the Covid orders is that they are a suspension of jury trials." The State further argues:

> Both Covid orders specified that no jury trial may occur. That alone should be sufficient to constitute a suspension of time limitations. If it were not, the Court clarified in the next paragraph of the order "that the continuances occasioned by Section 1 of this Order serve the ends of justice and outweigh the best interest of the public and the defendant to a speedy trial. Therefore, the time periods of such continuance shall be excluded from speedy trial computations pursuant to law, including but not limited to those set forth in the Louisiana Code of Criminal Procedure and the Louisiana Children's Code, and presumptively constitute just cause." The language clearly noted that these "continuances" should be excluded from speedy trial calculations under the Code of Criminal Procedure which presumably includes Code Crim. P. art. 580 concerning suspension of prescription.

Defendant counters the State's argument by asserting:

Counsel has not found authority specifically applying the general rules of statutory construction to orders of the Louisiana Supreme Court, but the Louisiana Supreme Court itself has approvingly used statutory methods of interpretation in interpreting its own Rules of Court. *See In re Donnan*, 01-3058, p. 7 (La. 1/10/03), 838 So.2d 715, 719-720, in which the court found that a Louisiana Supreme Court rule at issue was stated "in unambiguous terms" and must apply "as it is written."

We disagree with defense counsel and find that the clear wording of the supreme court's COVID-19 orders in January 2021 and February 2021 applies to any case in which trial had not commenced as of the time of the orders. Thus, the argument raised by the State pertaining to suspension in the trial court has merit and the time limit was extended by seventy-nine days. The trial court erred in granting the motion to quash.

If the eighty days from the 2021 COVID closure orders are added to the trial deadline above of August 14, 2021, the trial deadline was then November 2, 2021, prior to the filing of Defendant's December 7, 2021 motion to quash.

We also find the November 8, 2021 proceeding acted to suspend the time limitation.

The court minutes from November 8, 2021, state:

The defendant appears with counsel, Wilford Carter, Esq. Mr. Carter advises the Court a Motion as to the IQ of the Victim will be taken up by King Alexander, Esq., of the Public Defender's Office. The Court orders the Public Defender's Office maintained on the motion. Joshua Monroe, Esq., standing in for King Alexander, Esq., states the defense has no objection to the motion being continued. On motion of Asst. Attorney General Tasha Stockwell, the Court orders the motion re-fixed for December 7, 2021, and trial re-fixed for January 24, 2022. The defendant and counsel are notified in open Court.

According to the State's brief to this court, trial was scheduled for that day. In court, Mr. Carter indicated a motion concerning the victim's IQ would be taken up by Mr. Alexander, who was not present in court. Mr. Monroe, the attorney standing in for Mr. Alexander, indicated that he had no objection to the motion being

23

continued, and no objection was noted when the trial was refixed for January 24, 2022, on the State's motion.[11] On December 7, 2021, the day set for the hearing on the IQ motion, defense counsel filed a motion to quash, which was set for hearing on February 10, 2022, but was heard on January 13, 2022. The transcript of January 13, 2022, indicates that the court announced that the motion to quash and the motion to disqualify defense counsel would be taken up. After the trial judge granted the motion to quash, he indicated the other motion was moot (presumably the motion to disqualify as it was the only other motion mentioned that day). That motion was then withdrawn by the State.

During the hearing, in arguing his motion to quash, Mr. Carter discussed the November 8, 2021 proceedings as follows:

**MR. CARTER:**

Five. So, on November the 8th -- we have another hearing on November the 8th. Defense counsel was Wilford Carter advised [sic]the Court a motion as to IQ of the victim would be taken up by Mr. King. Mr. King -- Alexander King (sic) was retained on the case by the Court to deal with the issue of the victim's IQ, and whether or not the IQ was as the State alleged it was. So Mr. King was in that capacity and I handled all -- all the rest of the defense.

**THE COURT:**

The victim IQ or the defendant's IQ?

**MR. CARTER:**

The defendant's -- I think it's the defendant's IQ.

**THE COURT:**

Okay.

---

[11] It is worth noting that this court checked the trial court clerk of court's website and found that no motion concerning the victim's IQ was ever filed.

**MR. CARTER:**

No, no. The victim's IQ. The victim's IQ.

**THE COURT:**

Okay.

**MR. CARTER:**

Basically, if the victim's IQ is under a 72, then they can't give consent. That's basically where they were going with that, and he was -- he was questioning the constitutionality of that statute and whether or not they can actually prove what was the victim's IQ. And he was taking up on to challenge [sic] the Attorney General's office of whether or not that was an accurate statement -- 72 -- that the victim was under 72 IQ.

**THE COURT:**

Okay.

**MR. CARTER:**

So at that time, the Court ordered a Motion to Refix for 7/20/21 [12/7/21] and the trial refixed for January 24, '22. That's been a trial date of the 24th of January of this year was set on November 8, 2021.

The following cases, although not directly addressing the situation presented in this case, lend guidance. First, in *State v. Fish*, 05-1929, pp. 2–4 (La. 4/17/06), 926 So.2d 493, 495, the supreme court held that a mutually agreed-upon trial date acted to suspend the time limitation:

Apparently, neither side realized at that time that the later November trial date came after the date on which the prosecution would prescribe. At the hearing on defendant's motion to quash the prosecution as untimely, the state made clear that it did not accuse defense counsel of bad faith but indicated that it would never have agreed to the date of November 29, 2004, if it had realized that counsel then intended to file a motion to quash on grounds that the prosecution had prescribed as of November 17, 2004. Defense counsel acknowledged at the hearing that he had agreed to the November 29 date without realizing its significance for prescription. Counsel further explained that as he began to prepare for trial he realized the agreed-

upon trial date was in fact beyond the point of prescription that "it would be malpractice for me not to file a motion to quash."

However, without regard to the good faith or bad faith of counsel on either side, the status conference of July 8, 2004, constituted a grounds of suspension for purposes of La.C.Cr.P. art. 580 because it directly affected, by mutual assent, the state's ability to bring this case to trial in a timely manner. Whether the state and defense intended the result or not, the effect of their mutual agreement was to extend prescription beyond the date of November 17, 2004 in the same manner as if counsel had joined in a continuance for that avowed purpose. *State v. Rome*, 93–1221 (La.1/14/94), 630 So.2d 1284, 1288–89 (joint motions for continuance constitute preliminary pleas for purposes of art. 580); *State v. Anderson*, 38,718, p. 19 (La.App. 2nd Cir.12/15/04), 889 So.2d 1237, 1248 (same); *State v. Brent*, 00–0072, pp. 5–6 (La.App. 4th Cir.11/29/00), 775 So.2d 565, 569 (same); *Cf. State v. Brooks*, 838 So.2d 02–0792, pp. 4–5 (La.2/14/03), 838 So.2d 778, 781 (continuance of status hearing for purposes of allowing defendant to substitute counsel suspended running of prescription because it actually affected the state's ability to prosecute the case and gave the state an additional year in which to bring the case to trial). Thus, the state had until July 8, 2005, in which to try this case, and counsel's motion to quash the prosecution on grounds of prescription then suspended that date and continues to suspend it while the appellate courts review the merits of the prescription issue. *State v. Washington*, 02–1346, p. 6 (La.5/20/03), 846 So.2d 723, 727.

In *State v. Catalon*, 14-768, pp. 5–6 (La.App. 3 Cir. 12/23/14), 158 So.3d 114, 117–18, *writ denied*, 15-462 (La. 1/8/16), 184 So.3d 692, this court discussed whether the time limitation, pursuant to La.Code Crim.P. art. 578, was suspended when a defendant authorized a continuance of trial:

Within this period, the trial court continued the case on its own to allow the defense time to changeover to newly-appointed counsel. At this hearing, former counsel for the defense appeared and informed the court that he would be turning over his entire discovery packet to Defendant's new counsel the next week. The court responded by resetting the matter and issuing a new discovery order. Under similar circumstances, the supreme court has found such court action to suspend the prescriptive period. In [*State v.*] *Brooks*, [02-792 (La. 2/14/03),] 838 So.2d 778, the supreme court found that the trial court's own continuance, for the purpose of allowing a defendant time to substitute counsel, constituted a preliminary plea within the scope of La.Code Crim.P. art. 580. The court reasoned that the trial court's continuance, made solely to accommodate the defense and effectuate the defendant's right to counsel, suspended prescription because the

26

State's ability to prosecute was affected until the matter of the defendant's representation was settled. *Id.* As in *Brooks*, the trial court here continued the case to accommodate the defense. Similarly to *Brooks*, the State's ability to prosecute was affected until Defendant's new counsel had the opportunity to receive discovery material from former defense counsel and file any necessary motions. Accordingly, the trial court's continuance on June 1, 2012, suspended the time period for commencing trial. The State had until June 1, 2013 to commence trial.

Within this period, on February 22, 2013, the trial court granted a motion to continue. Neither Defendant nor defense counsel was present. The transcript reflects that the State both motioned to continue and objected to the motion, after speaking with the defense who allegedly asked the State to make the continuance on its behalf. The defense has never testified as to whether it authorized that request. Addressing a similar situation, in [*State v.*] *Dorignac*, [99-938 (La. 9/24/99),] 747 So.2d 1110, the supreme court found a discrepancy as to whether the defense requested a continuance warranted a remand for an evidentiary hearing. We, too, find that the circumstances surrounding the February 2013 continuance warrant a remand. An evidentiary hearing is necessary to determine whether defense counsel, in fact, asked the State to make a continuance on its behalf.

If the February 22, 2013 continuance is found to have been authorized by the defense, it suspended the prescriptive period for an additional year, and the State had until February 22, 2014 to commence trial. Within this period the trial court granted a defense motion to continue on October 1, 2013, which gave the State until October 1, 2014 to commence trial. Then, on March 6, 2014, the defense filed another motion to continue, which gave the State until March 6, 2015 to commence trial. If an evidentiary hearing reveals the defense authorized the continuance made on February 22, 2013, then the time to commence trial has yet to expire. If the hearing reveals the defense did not authorize the continuance, however, the prescriptive period has expired. Thus, our review of the pertinent motions and dates reveals the outcome of the evidentiary hearing will determine whether the time to commence trial has elapsed.

In *State v. Duraso*, 12-1463, pp. 6–7 (La.App. 3 Cir. 12/11/13), 127 So.3d 1015, 1020–21 (alterations in original) (footnote omitted), *writ denied*, 14-50 (La. 6/20/14), 141 So.3d 286, and *writ denied*, 14-74 (La. 6/20/14), 141 So.3d 286, this court found an express acquiescence by the defense to set trial outside the time

limitation, as opposed to silence, was sufficient to suspend the time limitation to proceed to trial:

> The critical period of suspension in this case occurred with the continuance of trial granted at the October 25, 2010 hearing. At that time, the State initiated the motion as follows:
>
> **Ms. Killingsworth [for the State]:**
>
> Okay. Your Honor, so that we'll have all this on the record, this is docket No. 11526–09, *State of Louisiana v. Deke Duraso*. He is charged with four counts of aggravated incest; also, docket No. 3677–08, failure to register as a sex offender.
>
> At this time, we would move to set both of these matters for October—no, November 29th, 2010 with a backup date of December 6th, 2010; and if that doesn't work, we will go January 3rd, 2011.
>
> **The Court:**
>
> Correct.
>
> **Mr. Williams [for the defendant]:**
>
> *On behalf of Mr. Duraso, I accept that particular date and confirmation thereof.* I request that the notice be sent to Mr. Duraso, Calcasieu Parish Jail. I don't know if he's still downstairs or not.
>
> **Ms. Killingsworth:**
>
> No, I wouldn't imagine so.
>
> **Mr. Williams:**
>
> Okay. Send him notice to Calcasieu Parish Correctional Center.
>
> (Emphasis added.) As explained in *Brooks*, 838 So.2d 778, a joint motion for continuance is a type of peremptory plea attributable to a defendant. *See also State v. Fish*, 05-1929 (La.4/17/06), 926 So.2d 493 (citing *State v. Rome*, 93-1221 (La.1/14/94), 630 So.2d 1284). Although the State presented the motion for continuance to the trial court, the defendant, through counsel, explicitly and definitively accepted the November 29, 2010 trial date.

That acceptance distinguishes the present matter from instances in which a defendant may be silent or fails to object to a state-filed motion for continuance. *See*, *e.g.*, *State v. C.W.W.*, 10-531 (La.App. 3 Cir. 12/8/10), 55 So.3d 1043 (an unpublished opinion wherein a panel of this court stated that it found ''no cases involving the statutory right to speedy trial in which a court has held that by failing to object to the setting of a trial outside the two-year time limitation, a defendant acquiesced in the setting.''), *writ denied*, 10-2866 (La.11/4/11), 75 So.3d 920. Rather, in this case, the defendant affirmatively ''accepted'' the continued date, effectively joining in the State's motion.

In this instance, the continued date of November 29, 2010, was within the two-year limitation period. However, La.Code Crim.P. art. 580(A) provides that when the defendant files a preliminary plea, such as a joint motion for continuance, ''in no case shall the state have less than one year after the ruling to commence the trial.'' In this case, the trial court granted the continuance at the date of hearing, October 25, 2010. Accordingly, the State had no less than one year from that date to commence trial, October 25, 2011. The record indicates that the defendant's trial was called and, ultimately, the defendant entered his guilty plea on September 7, 2011, within that one-year period. Accordingly, we find no error in the trial court's denial of the defendant's motion to quash.

In the present case, although no written motion regarding the victim's IQ was ever filed, the impression given by the defense on November 8, 2021, was that such a motion was either pending or forthcoming, and Mr. Monroe clearly indicated that the defense had no objection to the hearing on the motion being continued. Continuance of the hearing on the victim's IQ issue obviously necessitated a continuance of trial, as trial was scheduled for that day. Although this is a peculiar case, we find this oral motion to be a mutual agreement by the parties to extend the time limitation beyond November 18, 2021, in the same manner as a joint motion to continue trial. Viewing this as such, the State had one year from that date, or November 8, 2022, to bring Defendant to trial. Thus, Defendant's December 7, 2021 motion to quash preceded the deadline and should have been denied, as it was premature. Accordingly, we find that the trial court's ruling granting Defendant's

motion to quash should be reversed and the matter remanded for further proceedings in accordance with this court's opinion.

In conclusion, upon consideration of the Louisiana Supreme Court COVID orders from 2020 as well as the November 8, 2021 mutual agreement by the parties to extend the time limitation in the same manner as a joint motion to continue trial, we find that the trial court erred in granting Defendant's motion to quash. Because we find merit to the State's first assignment of error arguing that the prescriptive period for bringing Defendant to trial had not run when he filed his original motion to quash on December 7, 2021, all other assignments of error are pretermitted.

For these reasons, we hereby reverse the trial court's ruling granting Defendant's motion to quash and remand the matter for further proceedings in accordance with this court's opinion.

**REVERSED AND REMANDED.**